**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Russell MARCUM, Jr., Defendant–
Appellant.**

**No. 93–5140.**

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 25, 1993.

Decided Feb. 10, 1994.

600

**ARGUED:** William Howard Martin, Charles Town, West Virginia, for Appellant. Michael M. Fisher, Assistant United States Attorney, Charleston, West Virginia, for Appellee. **ON BRIEF:** Michael W. Carey, United States Attorney, Charleston, West Virginia, for Appellee.

Before WIDENER and HALL, Circuit Judges, and MICHAEL, United States District Judge for the Western District of Virginia, sitting by designation.

## OPINION

K.K. HALL, Circuit Judge:

Russell Marcum, Jr., appeals his conviction for mail fraud, in violation of 18 U.S.C. § 1341. He also contends that the district court misapplied the Sentencing Guidelines. We affirm both the conviction and sentence.

### I.

Marcum was a corporal in the Logan County, West Virginia, Sheriff's Department, and president of the Logan County Deputy Sheriff's Association (LCDSA), a charitable organization. In mid–1989, the LCDSA, along with the Logan Fraternal Order of Police (FOP), began conducting public bingo games. About a year later, the LCDSA purchased the bingo equipment from the FOP and began running the twice-weekly games by itself.

As LCDSA president, Marcum was in charge of administering the games. He purchased the bingo equipment on behalf of the LCDSA, rented the game facility, applied for and received a state bingo license, assigned staff to work the games and clean the building, and filled out the financial reports required by the state. Of Logan County's

eight other deputy sheriffs, all members of the LCDSA, seven participated in running the games.

Not long after the LCDSA became the games' sole sponsor, Marcum began skimming ten percent of the games' gross proceeds to distribute to the deputies, including himself, who worked the game. By accepting the skimmed proceeds, the deputies violated state law.[1] Each deputy usually received between $50–$100 per session, and the illegal skimmings cumulated to at least $25,000 by February, 1992. Though the LCDSA's gross proceeds from its bingo games are statutorily exempt from state taxation, Marcum failed to note the payments to the deputies on the "Bingo Financial Returns" he submitted to the state, thereby understating the LCDSA's gross income.

Pursuant to an FBI investigation of the LCDSA's bingo operation, Marcum appeared before a federal grand jury in March, 1992. Thereafter, Marcum and his counsel negotiated a plea agreement with the government whereby Marcum agreed to plead guilty to an information charging him with making a false statement on his federal income tax return. Marcum then explained the details of the bingo operation to the FBI and admitted his involvement in the skimming. However, Marcum later withdrew his consent to the plea agreement and was indicted by the grand jury for mail fraud. Following a jury trial, Marcum was convicted and sentenced, and this appeal followed.

### II.

Marcum alleges that he was selectively prosecuted; after the trial, he moved for a hearing on the issue.[2] The district court

---

1. W.Va.Code § 47-20-12 (1992) provides that "no individual who participates in any manner in the conduct of a bingo occasion ... may receive or accept any commission, wage, salary, reward, tip, donation, gratuity or other form of compensation whether directly or indirectly, regardless of the source, for his work, labor or services."

2. Because Marcum's motion was still pending before the district court when he filed his notice of appeal, we must, as a threshold matter, decide

whether we have jurisdiction to hear this appeal. Fed.R.App.P. 4(b) governs appeals in criminal cases. The version of the rule that was in effect at the time Marcum noticed his appeal can be construed to have required him to file a "new" notice within ten days after the district court had ruled on the motion. Rule 4(b) has recently been amended, however, to provide as follows:

If a defendant makes a timely motion specified immediately below, ... an appeal from a judgment of conviction must be taken within 10 days after the entry of the order disposing of the last

referred the matter to a magistrate judge, who, after an investigation, recommended that the court deny the motion. The district court adopted the magistrate judge's findings and recommendation.

■■■ We review the district court's denial of Marcum's motion for abuse of discretion. *United States v. Richardson*, 856 F.2d 644, 647 (4th Cir.1988). In evaluating the need for a hearing in Marcum's case, the magistrate judge (and, in turn, the district court) considered (1) whether Marcum's claim was not frivolous, (2) whether Marcum's claim was supported by specific factual allegations, and (3) the government's response and explanation of its decision. *Id.*

■ After receiving the government's response, the magistrate judge concluded that a hearing was unnecessary because of Marcum's inability to proffer specific facts, as distinguished from conclusory allegations, in support of his claim, and because Marcum's statements admitted into evidence at trial, acknowledging his involvement in the skimming, and his subsequent conviction were such strong indicators of his actual guilt as to render frivolous his claim of selective prosecution. We note that the magistrate judge erred with regard to this latter finding, as the issue of selective prosecution "relates not to the guilt or innocence of appellants, but rather addresses itself to a constitutional defect in the institution of the prosecution." *United States v. Berrigan*, 482 F.2d 171, 175 (3d Cir.1973).

Nevertheless, upon a careful examination of the record, we cannot say that the district court abused its discretion by denying Marcum's request for a hearing. We would add that, in order to prevail on his claim, Marcum would have to show not just that he had been singled out for prosecution, but that the decision to prosecute was based on unconstitutional considerations. *Id.* For example, the government may not choose to prosecute a person solely because of his race, religion, or the exercise of his constitutional rights. *Id.* We can discern nothing in the record that could support an argument that the government prosecuted Marcum as the result of an unconstitutional motivation, and conclude that his claim must ultimately fail as a matter of law.

### III.

■ Marcum contends that the evidence adduced at trial was insufficient to sustain a conviction for mail fraud, contending that the government was unable to show that anyone had been defrauded by his skimming.[3] In

---

such motion outstanding, or within 10 days after the entry of the judgment of conviction, whichever is later. This provision applies to a timely motion:

(1) for judgment of acquittal;
(2) for arrest of judgment;
(3) for a new trial on any ground other than newly discovered evidence; or
(4) for a new trial based on the ground of newly discovered evidence if the motion is made before or within 10 days after entry of the judgment.

A notice of appeal filed after the court announces a decision, sentence, or order but before it disposes of any of the above motions, is ineffective until the date of the entry of the order disposing of the last such motion outstanding, or until the date of the entry of the judgment of conviction, *whichever is later.* (emphasis supplied)

By order of the Supreme Court dated April 22, 1993, Rule 4(b), as amended, became effective on December 1, 1993, and governs all proceedings in appellate cases commenced on or after that date, and, "insofar as just and practicable," all proceedings in appellate cases then pending. Applying the amended version of Rule 4(b) to Marcum's case, thereby rendering his notice of appeal ineffective until April 1, 1993, the date the district court denied Marcum's motion for arrest of judgment on the ground of selective prosecution, allows us to review the district court's action. Because the entire record has been preserved on appeal, and because Marcum's lone remaining option with regard to his claim of selective prosecution would be a proceeding under 28 U.S.C. § 2255, requiring the expenditure of significant additional time and resources, direct appellate review of the district court's treatment of Marcum's claims serves the ends of justice and is practicable.

3. 18 U.S.C. § 1341 provides:

Whoever, having devised ... any scheme or artifice to *defraud* ... for the purpose of executing such scheme or artifice ... places in any post office ... any matter or thing whatever to be sent or delivered by the Postal Service ... or knowingly cause to be delivered by mail according to the direction thereon ... shall be fined not more than $1,000 or imprisoned not more than five years, or both. (emphasis supplied)

support of this argument, Marcum asserts that, because the skimmed LCDSA proceeds were paid exclusively to LCDSA members and the LCDSA was formed to promote the welfare of its members, the persons intended to receive the benefit of the bingo proceeds actually received that benefit.

■ Marcum's premise is faulty, as it fails to distinguish the LCDSA as an entity apart from its individual members. West Virginia law provides that, as a charitable organization, the LCDSA can be sued in its own right, W.Va.Code § 29–19–15a (1992). Therefore, in a lawsuit premised upon the alleged wrongs of its members acting on its behalf, the LCDSA itself could be a proper defendant—and conceivably the *sole* defendant. In our opinion, its capacity to be sued establishes the LCDSA's legal identity to an extent sufficient for us to conclude that, by virtue of Marcum's skimming ten percent of the gross proceeds from the bingo games, the LCDSA was defrauded by a like amount. In short, although the government may have more easily proved a different charge against Marcum, it adequately proved this one.[4]

### IV.

■ Marcum asserts that the district court misapplied the Sentencing Guidelines, improperly finding the following specific offense characteristics that increased his offense level fourteen points:

| | |
|---|---|
| Loss in excess of $20,000 [§ 2F1.1(b)(1)(E) ] | + 4 |
| More than minimal planning involved in the offense [§ 2F1.1(b)(2) ] | + 2 |
| Misrepresentation of acting on behalf of a charitable organization [§ 2F1.1(b)(3) ] | + 2 |
| Leadership or organizational role in a criminal activity involving five or more participants [§ 3B1.1(a) ] | + 4 |
| Abuse of a position of trust [§ 3B1.3] | + 2 |

Because Marcum's arguments involve mixed questions of law and fact, we give due deference to the district court's application of the guidelines to the facts. *United States v. Daughtrey*, 874 F.2d 213, 217–18 (4th Cir. 1989). Examining each contention in turn, we conclude that the district court properly applied the guidelines.

Marcum admitted to the FBI that he had skimmed $25,800 to $29,000 from the bingo games. He does not now deny this figure, but instead argues that no one "lost" money as a result. This argument is identical to his contention that no one was "defrauded" as a result of his actions. Having already rejected this argument in Section III, *supra,* we need not address it further.

■ The comments to the guidelines deem "more than minimal planning" to be present in any case involving repeated acts over a period of time, unless it is clear that each instance was purely opportune. U.S.S.G. § 1B1.1, comment. (n.1(f)). Marcum's skimming was not an isolated incident of which he took an opportunistic advantage; he ran the games twice a week over a period of nearly two years with the intent to skim the proceeds each evening.

■ Marcum misrepresented to the public that he was conducting the bingo games wholly on behalf of the LCDSA, a charitable organization. The facts show, however, that he was acting in part for himself and his fellow deputies. We have also observed that, as president of the LCDSA, Marcum supervised all aspects of the bingo operation, thus marking him as the scheme's organizer and leader.

■ Marcum's abuse of his status as LCDSA president, a position entrusted him

---

The statute clearly requires the scheme sought to be perpetrated through the mails to have fraud as an objective. Marcum does not dispute that he mailed the false bingo financial reports to the state, or that compliance with the reporting statute was necessary in order to allow the LCDSA to continue to conduct the games.

4. Marcum also attacks his conviction on the ground that his trial counsel was ineffective. Because resolving ineffective assistance claims ordi-

narily requires an evidentiary hearing, we generally insist upon such claims being first presented to the district court in a 28 U.S.C. § 2255 proceeding, unless the ineffectiveness appears on the trial record itself. *United States v. Underwood*, 970 F.2d 1336, 1340 (4th Cir.1992). Ineffectiveness is not manifest on this record. We decline, then, to deviate from our usual practice by considering Marcum's ineffective assistance claim on direct appeal.

by his fellow deputies, facilitated the commission of the offense. As president, Marcum was responsible for running the games and completing and mailing the financial returns; without this position of trust, he would not have had the opportunity to commit the crime for which he stands convicted.[5]

The judgment of the district court is affirmed in its entirety.

*AFFIRMED.*

5. We note that the district court *subtracted* six points from Marcum's offense level because it found that the guidelines had not taken into consideration that West Virginia had failed to diligently regulate bingo. The district court ruled, in effect, that the state's laxity encouraged crimes like Marcum's. The government does not challenge this downward departure on appeal.