**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellant,</u>

v.                                                              No. 96-4843

JAMES RAY STUBBS, JR.,
<u>Defendant-Appellee.</u>

Appeal from the United States District Court
for the Eastern District of North Carolina, at Greenville.
Malcolm J. Howard, District Judge.
(CR-95-63-H)

Argued: May 9, 1997

Decided: June 23, 1997

Before RUSSELL and WILLIAMS, Circuit Judges, and
MICHAEL, Senior United States District Judge for the
Western District of Virginia, sitting by designation.

_____

Vacated and remanded for sentencing by unpublished per curiam
opinion.

_____

**COUNSEL**

**ARGUED:** David J. Cortes, Assistant United States Attorney,
Raleigh, North Carolina, for Appellant. Bobby Grey Deaver, Fayette-
ville, North Carolina, for Appellee. **ON BRIEF:**  Janice McKenzie
Cole, United States Attorney, Raleigh, North Carolina, for Appellant.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

James Ray Stubbs, Jr., pleaded guilty to one count of mail fraud, see 18 U.S.C.A. § 1341 (West Supp. 1997), in connection with his fraudulent marketing of automobile warranty policies. The Government appeals Stubbs's sentence, arguing that the district court improperly granted a significant downward departure. We agree that the district court abused its discretion in concluding that the circumstances of this case took it out of the heartland of the applicable guideline. Accordingly, we vacate Stubbs's sentence and remand for resentencing.

I.

In March 1985, Stubbs founded Automotive Guaranty Corporation (AGC), a North Carolina corporation that marketed and serviced used car warranties through various used car dealerships throughout the country. Stubbs was president and chief executive officer of AGC until November 1991, when he sold the corporation to Royal Underwriters, Inc., a shell corporation whose only shareholder was Richard West, AGC's former Vice-President of Sales. AGC marketed service warranties, in which AGC promised to reimburse a warranty holder for contractually defined breakdowns, and marketed product warranties, in which AGC sold products with the promise that if the product failed, AGC would reimburse the claimant for any necessary repairs. Stubbs managed and controlled the marketing of these warranties and the payment of claims.

During the late 1980s, AGC began experiencing financial difficulties. By March 1990, AGC was deeply in debt with liabilities exceeding assets by approximately $1.8 million. AGC was unable to pay all its legitimate claims and a multitude of acknowledged claims went unpaid. Stubbs nevertheless continued to market warranties. During

2

these financially difficult times, Stubbs diverted at least $160,000 in corporate funds to his own use. He also maintained at least ten bank accounts so that he could manipulate and inflate the funds in the accounts to conceal AGC's true financial status. The parties agree that when Stubbs sold AGC in November 1991, AGC warranty holders had suffered losses between $500,000 to $800,000 on unpaid claims.[1] In addition, many other victims were subjected to "slow pays," while others bought the warranties under the false pretense that the policy would pay if they made a claim.

The North Carolina Attorney General, after receiving numerous complaints from AGC customers, filed suit to close the business and referred the case to the Federal Bureau of Investigation. The federal investigation resulted in Stubbs's indictment on October 18, 1995, for conspiracy to commit wire fraud (count 1), mail fraud (counts 2-13), and wire fraud (counts 14-23). A superseding indictment was filed on December 19, 1995, which added charges of making false statements upon a loan application (counts 24-26). On July 31, 1996, pursuant to a plea agreement, Stubbs pleaded guilty to one count of mail fraud. All remaining charges were dismissed.

The district court sentenced Stubbs pursuant to § 2F1.1 of the Sentencing Guidelines, which applies to violations of 18 U.S.C.A. § 1341 (West Supp. 1997). See U.S. Sentencing Guidelines Manual § 2F1.1 (Nov. 1995). Section 2F1.1 prescribes a base offense level of 6. The district court increased the offense level by ten because the loss exceeded $500,000, but did not exceed $800,000, see U.S.S.G. § 2F1.1(b)(1)(K), and increased the offense level by two for more than minimal planning, see U.S.S.G. § 2F1.1(b)(2)(A). Stubbs received a three-level downward adjustment, however, for acceptance of responsibility, see U.S.S.G. § 3E1.1, for a total offense level of 15. With the exception of a 1983 driving-under-the-influence conviction, Stubbs had no prior criminal record, resulting in a criminal history

_____

[1] AGC, though arguably an "insurance company" under North Carolina law, see N.C. Gen. Stat. § 58-1-10 (1994), was subject to a special exemption for automobile service contracts that allowed it to operate without maintaining "reserves" sufficient to pay claims, see N.C. Gen. Stat. § 58-1-15(b) (1994).

category of I. These calculations produced a sentencing range of 18-24 months imprisonment.

The district court, however, determined that the circumstances of this case took it out of the applicable guideline's heartland and warranted a downward departure pursuant to U.S.S.G. § 5K2.0. As a result, the district court granted Stubbs a six-level downward departure and sentenced him to three years probation, with conditions that included confinement for 4 consecutive weekends and payment of a $10,000 fine. The Government appeals the district court's significant downward departure from the sentencing range imposed by the Guidelines.

II.

Current law governing departure from the sentencing guidelines was established by the Supreme Court in Koon v. United States, 116 S. Ct. 2035 (1996), and applied by this Court in United States v. Brock, 108 F.3d 31 (4th Cir. 1997). In Brock , we delineated a framework for determining when a factor identified by the district court may support a departure. Having identified the factors that may potentially support a departure, the district court must determine whether the factor is a forbidden, encouraged, discouraged, or unmentioned basis for departure. See Brock, 108 F.3d at 34. If the factor is encouraged, and is not taken into account by the applicable guideline, the district court may exercise its discretion and depart. However, if the factor is encouraged, but the applicable guideline has already adequately taken the factor into account, or if the factor is discouraged, "then departure is permissible `only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present.'" Id. at 34-35 (quoting Koon, 116 S. Ct. at 2045). If a factor is neither encouraged nor discouraged, but is listed by the Commission as one appropriately considered for departure, departure is permissible "only if the factor is present to such an exceptional or extraordinary degree that it removes the case from the heartland of situations to which the guidelines was fashioned to apply." Id. at 35. If a factor is unmentioned, the district court may depart only if it determines that the structure and theory of both the relevant individual guideline and the Guidelines as a whole take the case from the heartland of the applicable

4

guideline. See id. We review the district court's decision to depart for abuse of discretion. See Koon, 116 S. Ct. at 2048.

The district court based its downward departure on the following grounds: (1) that more than five years had passed between the date of the offense and the scheduled date of the trial; (2) that approximately five years prior to the date of sentencing, an attorney told Stubbs that he could anticipate being indicted, thereby causing Stubbs extraordinary emotional distress that affected his family and business life during the ensuing years; (3) that in May 1987 Stubbs employed private counsel to lobby the North Carolina legislature to require automobile warranty companies such as AGC to maintain reserves; and (4) that Stubbs had no prior criminal record. We must determine whether the factors relied upon by the district court take this case out of the heartland of U.S.S.G. § 2F1.1, thereby justifying a downward departure. We conclude that none of the cited factors are permissible bases for departure. As a result, we vacate the sentence and remand for resentencing.

The first factor identified by the district court, that five years passed between the date of the offense and the date of trial, is an unmentioned factor. We conclude that this factor does not warrant a downward departure because, considering the structure and theory of § 2F1.1 and the Guidelines as a whole, this circumstance is not sufficient to remove the case from of the heartland of the guideline. Rather, as the Government pointed out at sentencing, complex interstate fraud conspiracies often take years to investigate before coming to fruition. Furthermore, Stubbs presented no evidence that the Government intentionally delayed pursuit of his conviction. Accordingly, we conclude that the district court erred when it considered the five-year time lapse a factor that justified a downward departure.

The Commission expressly considered the second and third factors cited by the district court, Stubbs's emotional distress and prior good works, and instructed that they are ordinarily not relevant in determining whether a sentence should be outside the applicable guideline range. Therefore, these factors are discouraged. See U.S.S.G. § 5H1.3, p.s. ("Mental and emotional conditions are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range."); U.S.S.G. § 5H1.11, p.s. (civic activities,

5

employment-related contributions, and similar prior good works are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range). Nothing in the record indicates that either of these factors was present to such an exceptional degree that a downward departure is warranted.

And finally, the district court's fourth factor, that Stubbs had no prior convictions, is a forbidden factor that cannot provide a basis for departure. See U.S.S.G. § 4A1.3, p.s. ("The lower limit of the range for Criminal History Category I is set for a first offender with the lowest risk of recidivism. Therefore, a departure below the lower limit of the guideline range for Criminal History Category I on the basis of the adequacy of criminal history cannot be appropriate."); see also Koon, 116 S. Ct. at 2052-53. Therefore, none of the factors underlying the district court's decision warranted a downward departure from the applicable guideline range.

On appeal, Stubbs raises four additional factors that he argues justify the district court's downward departure: North Carolina's failure to adequately regulate the automobile warranty business while Stubbs was president of AGC, outside economic pressures on the business, Stubbs's excellent employment history and family ties, and the speculativeness of the amount of losses.[2] Stubbs raised the first three factors to the district court at sentencing, and the district court properly rejected these arguments as bases for a downward departure. See U.S.S.G. § 5K2.12, p.s. ("economic pressures upon a trade or business do not warrant a decrease in sentence"); U.S.S.G. § 5H1.5, p.s.

_____

[2] Stubbs cites United States v. Marcum, 16 F.3d 599 (4th Cir. 1994), in support of his argument that North Carolina's laxity in failing to pass legislation requiring companies to maintain reserves encouraged his crime. Stubbs's reliance on Marcum is misplaced, however. In Marcum, we did not affirm the district court's six-level downward departure based upon its finding "that the guidelines had not taken into consideration that West Virginia had failed to diligently regulate bingo." Rather, we simply noted that the district court had granted Marcum a downward departure on that basis and that the Government had failed to challenge it on appeal. Marcum, 16 F.3d 599, 604 n.5. Stubbs's argument, therefore, is not a recognized basis for departure. At best, an "unmentioned" factor that, under the circumstances of this case, does not warrant a departure.

(employment record is not ordinarily relevant in determining sentence); U.S.S.G. § 5H1.6, p.s. (family and community ties are not ordinarily relevant in determining sentence). As to the alleged uncertainty of the amount of losses, the Commission acknowledges that a downward departure may be warranted if the determined losses "overstate the seriousness of the offense." U.S.S.G.§ 2F1.1, comment. (n.10). In this case, however, Stubbs agreed to the loss range of $500,000 to $800,000. Moreover, these amounts fail to take into account indirect losses incurred by AGC customers who were subjected to "slow pays" and who invested in worthless warranties. In other words, the loss range accepted by the district court likely underestimated, not overestimated, the seriousness of Stubbs's offense.

III.

Because none of the bases for departure set forth by Stubbs take this case out of the heartland of the applicable guideline, we vacate Stubbs's sentence and remand for resentencing within the applicable guideline range of 18-24 months.

VACATED AND REMANDED FOR RESENTENCING

7