**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                        No. 97-4363

WILLIAM ARAMONY,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                        No. 97-4540

THOMAS J. MERLO,
Defendant-Appellant.

Appeals from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, Chief District Judge.
(CR-94-373)

Argued: December 2, 1998

Decided: January 28, 1999

Before HAMILTON, LUTTIG, and KING, Circuit Judges.

_____

Affirmed in part, vacated in part, and remanded by published opinion.
Judge Hamilton wrote the opinion, in which Judge King joined. Judge
Luttig wrote a separate opinion concurring in part and dissenting in
part.

_____

**COUNSEL**

**ARGUED:** John DeWitt Cline, FREEDMAN, BOYD, DANIELS, HOLLANDER, GUTTMANN & GOLDBERG, Albuquerque, New Mexico, for Appellant Aramony; Richard Dennis Heideman, THE HEIDEMAN LAW GROUP, P.C., Washington, D.C., for Appellant Merlo. Gordon Dean Kromberg, Assistant United States Attorney, Alexandria, Virginia, for Appellee. **ON BRIEF:** William B. Moffitt, ASBILL, JUNKIN & MOFFITT, Washington, D.C., for Appellant Aramony. Helen F. Fahey, United States Attorney, Randy I. Bellows, Assistant United States Attorney, Alexandria, Virginia, for Appellee.

_____

**OPINION**

HAMILTON, Circuit Judge:

Codefendants William Aramony and Thomas Merlo (collectively the Defendants) appeal their respective sentences imposed following our remand for resentencing in United States v. Aramony, 88 F.3d 1369 (4th Cir. 1996), cert. denied, 117 S. Ct. 1842 (1997) (Aramony I). We affirm the Defendants' sentences in all respects except for the district court's imposition of a $300,000 fine on Aramony and a $30,000 fine on Merlo. Accordingly, we vacate the fine components of the district court's respective judgments and remand for reconsideration of its decisions imposing fines on the Defendants in accordance with our instructions as set forth herein.

I

In Aramony I, we affirmed the Defendants' convictions on various counts of fraud, see 18 U.S.C. §§ 371, 1341, 1343; various counts of engaging in the interstate transportation of fraudulently acquired property, see 18 U.S.C. § 2314; various counts of filing false income tax returns, see 26 U.S.C. § 7206(1); and various counts of aiding the filing of false income tax returns, see 26 U.S.C. § 7206(2). See Aramony I, 88 F.3d at 1373. However, we vacated the Defendants' convictions on various counts of money laundering, see 18 U.S.C. § 1957, because the district court did not require the jury to make a

2

finding on an essential element of money laundering, and under the circumstances of the case, we were precluded from applying harmless-error analysis. See Aramony I, 88 F.3d at 1373, 1385-87.

Our vacatur of the Defendants' money laundering convictions required us to vacate the Defendants' respective sentences and remand for resentencing, because the Defendants' total offense levels under the United States Sentencing Guidelines (the Sentencing Guidelines or USSG) had been based upon their money laundering convictions. We also vacated the district court's $552,188.97 forfeiture orders against Aramony and Merlo, which were premised on their money laundering convictions. See id. at 1392.

A. Background.

The facts underlying the Defendants' convictions are set forth in detail in Aramony I. See id. at 1372-76. Accordingly, we need only briefly summarize them here.

Aramony was the chief executive officer of the United Way of America (UWA) from 1970 until his termination in March 1992. UWA is "a nonprofit organization that acts as a service organization for local United Way organizations located throughout the United States." Id. at 1373. UWA was incorporated in New York and is headquartered in Alexandria, Virginia. Merlo served as UWA's chief financial officer from January 1990 until his termination in March 1992.

In their leadership positions, both men improperly used UWA money for personal gain. For example, Aramony charged personal chauffeuring expenses to UWA and purchased a condominium in Florida for his personal use with UWA funds, and Merlo used his position at UWA to personally obtain $120,000 in proceeds of an annuity belonging to UWA. Merlo also used his position at UWA to aid Aramony in his various frauds on UWA, many of which served to further Aramony's relationships with various women.

3

B. The Defendants' Initial Sentencings.

The district court initially sentenced the Defendants on June 22, 1995. Pursuant to the grouping rules of the Sentencing Guidelines, see USSG § 3D1.1-5 (1991),[1] the Defendants' money laundering convictions provided their respective base offense levels for purposes of calculating their sentencing ranges. The district court sentenced Aramony to eighty-four months' imprisonment and Merlo to fifty-five months' imprisonment, with each to serve three years of supervised release. Additionally, pursuant to 18 U.S.C. § 982, the district court ordered the Defendants to forfeit $552,188.97 on account of their money laundering convictions. In light of this forfeiture order, the district court did not impose any fines upon the Defendants.

Of relevance in the present appeal is the fact that the Presentence Report (PSR) prepared for the Defendants' initial sentencings, recommended a two-level increase in the Defendants' offense level with respect to the fraud counts pursuant to USSG § 2F1.1(b)(2) (1991). USSG § 2F1.1(b)(2) (1991) provides for a two-level increase in a defendant's base offense level with respect to any fraud counts "[i]f the offense involved (A) more than minimal planning, or (B) a scheme to defraud more than one victim . . . ." Id. (emphasis added).

The Defendants objected to this recommended increase. At sentencing, the district court sustained the Defendants' objections with respect to USSG § 2F1.1(b)(2)(A) (1991), separately commenting with regard to each defendant that his fraud crimes did not involve more than minimal planning. However, the district court never expressly addressed the applicability of a two-level increase pursuant to USSG § 2F1.1(b)(2)(B) (1991) for a scheme to defraud involving more than one victim.

C. The Defendants' Resentencings.

Following remand, the probation officer prepared revised PSRs for the Defendants. The revised PSRs are identical to the initial PSRs

_____

[1] For ex post facto reasons, the district court used the 1991 version of the Sentencing Guidelines in calculating the Defendants' sentences both at their initial sentencings and at their resentencings.

4

with the exception of certain redactions and other changes made to reflect the reversal of the Defendants' convictions on the money laundering counts. With the money laundering convictions vacated, the grouping rules of the Sentencing Guidelines, <u>see</u> USSG § 3D1.1-5 (1991), required the Defendants' respective base offense levels to be premised upon their fraud convictions.

1. Aramony.

The district court resentenced Aramony on April 25, 1997. In resentencing Aramony, the district court determined that Aramony's total offense level under USSG § 2F1.1 (1991), which is the section of the Sentencing Guidelines dealing with offenses involving fraud or deceit, was twenty-seven, consisting of a base offense level of six, an eleven-level increase based upon the amount of loss involved as quantified in a dollar amount,[2] a two-level increase pursuant to USSG § 2F1.1(b)(2)(B) (1991) for a scheme to defraud involving more than one victim, a two-level increase pursuant to USSG§ 2F1.1(b)(3)(A) (1991) for a misrepresentation that Aramony was acting on behalf of a charitable organization, a four-level increase pursuant to USSG § 3B1.1(a) (1991) for Aramony's role in the offense, and a two-level increase pursuant to USSG § 3B1.3 (1991) for Aramony's abuse of a position of trust. The district court determined Aramony's Criminal

_____

[2] Pursuant to USSG § 1B1.3 (1991), in calculating the amount of loss involved, the district court counted losses stemming from conduct for which Aramony was indicted, but successfully moved for judgment of acquittal at the close of the government's case-in-chief. Specifically, the district court counted losses stemming from Aramony's conduct, as detailed in Aramony's revised PSR, in fraudulently obtaining money from an organization related to UWA named Partnership Umbrella, Inc. (PUI). PUI's primary purpose was to act as a support organization for charities by endeavoring "to aid and assist not-for-profit organizations to secure the economic and related benefits of volume purchasing through development and management of national purchasing programs on behalf of such organizations." <u>Aramony I</u>, 88 F.3d at 1373 n.2 (internal quotation marks omitted). According to Aramony's revised PSR, his <u>modus operandi</u> in defrauding PUI was similar to his <u>modus operandi</u> in defrauding UWA. For example, Aramony caused PUI funds to be used to pay for personal travel expenses incurred by him and one of his girlfriends.

5

History Category to be I. Aramony's total offense level of twenty-seven when combined with his Criminal History Category of I resulted in a sentencing range of seventy to eight-seven months' imprisonment.**3** Within this range, the district court sentenced Aramony to eighty-four months' imprisonment.

The district court then imposed a $300,000 fine on Aramony. In this regard, the district court made a conclusory finding that Aramony had the financial means to pay a $300,000 fine. Furthermore, the district court commented that it did not impose a fine on Aramony at his initial sentencing "because of the amount of forfeiture that was involved." (J.A. 382). The district court then commented that absent the forfeiture, it found the imposition of a $300,000 fine appropriate. Of relevance in this appeal, Aramony objected to the inclusion of any loss sustained by PUI in the calculation of his offense level, to the two-level increase in his offense level under USSG§ 2F1.1 (1991) pursuant to USSG § 2F1.1(b)(2)(B) (1991) for a scheme to defraud involving more than one victim, and to the two-level increase in his offense level under USSG § 2F1.1 (1991) pursuant to USSG § 2F1.1(b)(3)(A) (1991) for a misrepresentation that Aramony was acting on behalf of a charitable organization. Aramony also objected to the district court's refusal to grant his motion for a downward departure based upon his allegedly extraordinary good works.

Finally, Aramony objected to the imposition of a fine on the ground that he lacked the ability to pay any amount of fine given his then current financial condition, his term of imprisonment, and his likely inability to earn any significant amount of money upon expiration of his term of imprisonment in light of his advanced age and status as a convicted felon. Aramony also pointed out that the information contained in his revised PSR concerning his financial condition had not been updated from his initial PSR.

In response to Aramony's objection to the imposition of a $300,000 fine, the district court acknowledged that its finding that

_____

**3** In calculating Aramony's sentence under the Sentencing Guidelines, the district court refused to grant a motion by Aramony for a downward departure in his sentence based upon his alleged extraordinary good works.

6

Aramony had the ability to pay a $300,000 fine was based upon the information in the original PSR. The district court then invited Aramony to update his financial information by motion, stating that it would "be glad to examine" such information. (J.A. 384).

On May 1, 1997, Aramony filed a notice of appeal. On May 9, 1997, Aramony filed a motion pursuant to Federal Rule of Criminal Procedure 35 to correct the fine component of his sentence. Aramony attached an updated financial statement to his motion reflecting that his debts exceeded his assets by more than $850,000, and his monthly cash flow is negative. On June 2, 1997, the district court denied the motion on the ground that Aramony's notice of appeal had divested it of jurisdiction.

2. Merlo.

The district court resentenced Merlo on May 23, 1997. At his resentencing, the district court determined that Merlo's total offense level with respect to the fraud counts was twenty-three, consisting of a base offense level of six, an eleven-level increase based upon the amount of monetary loss involved,[4] a two-level increase pursuant to USSG § 2F1.1(b)(2)(B) (1991) for a scheme to defraud involving more than one victim, a two-level increase pursuant to USSG § 2F1.1(b)(3)(A) (1991) for a misrepresentation that Merlo was acting on behalf of a charitable organization, and a two-level increase pursuant to USSG § 3B1.3 (1991) for Merlo's abuse of a position of trust. The district court determined Merlo's Criminal History Category to be I. Merlo's total offense level of twenty-three when combined with his Criminal History Category of I resulted in a sentencing range of forty-six to fifty-seven months' imprisonment. Within this range, the district court sentenced Merlo to fifty-five months' imprisonment.

_____

[4] As with Aramony, the district court counted losses stemming from conduct for which Merlo was indicted, but successfully moved for judgment of acquittal at the close of the government's case-in-chief. Specifically, the district court counted losses stemming from Merlo's conduct, as detailed in Merlo's revised PSR, in fraudulently obtaining money from PUI. For example, the revised PSR detailed how Merlo aided Aramony in diverting thousands of dollars in PUI funds to pay for personal travel expenses incurred by Aramony and one of his girlfriends.

7

The district court then imposed a $30,000 fine on Merlo.**5** In this regard, the district court made a conclusory finding that Merlo had the financial means to pay a $30,000 fine. As with Aramony, the district court commented that it did not impose a fine initially because of the amount of forfeiture that was involved.

Of relevance in this appeal, Merlo objected to the inclusion of any loss sustained by PUI in the calculation of his offense level, to the two-level increase pursuant to USSG § 2F1.1(b)(2)(B) (1991) for a scheme to defraud involving more than one victim, and to the imposition of the $30,000 fine. Merlo noted a timely appeal of his sentence also.

II

The Defendants first complain that the district court erred in including, under the theory of relevant conduct, see USSG § 1B1.3 (1991),**6** the amount of PUI losses as attributed to them in their respective revised PSRs in calculating their respective offense levels under USSG § 2F1.1 (1991). According to the Defendants, the district court erred because: (1) they successfully moved for judgments of acquittal on the PUI counts; and (2) they were effectively precluded from rebutting, for purposes of sentencing, the government's evidence at trial that they defrauded PUI in various ways.

In response, the government initially argues that the law of the case doctrine precludes the Defendants from making their first argument, because the same argument was made in their joint brief in their first appeal and rejected by this court in Aramony I , see id. at 1392. Alternatively, the government relies upon the Supreme Court's recent deci-

_____

**5** Prior to the district court's imposition of this fine, Merlo informed the district court that the $125,988 certificate of deposit listed as his asset in his revised PSR had been released to UWA in partial satisfaction of a civil judgment against him, which we affirmed in Merlo v. United Way of America, 43 F.3d 96 (4th Cir. 1994).

**6** Generally stated and of relevance in this appeal, USSG § 1B1.3 (1991) directs sentencing courts to consider all related conduct and resulting harm in determining a defendant's specific offense level characteristics, whether or not such conduct resulted in a conviction.

sion in <u>United States v. Watts</u>, 117 S. Ct. 633 (1997), in support of its position that the sentencing theory of relevant conduct, as set forth in USSG § 1B1.3 (1991), permits a district court, for purposes of determining a defendant's offense level, to factor in conduct by a defendant upon which he or she was indicted but successfully moved for judgment of acquittal, so long as the conduct has been proved by a preponderance of the evidence. As for the Defendants' second argument, the government disputes that the Defendants were denied the opportunity to present evidence rebutting its evidence of fraud on PUI perpetrated by the Defendants.

We first address the government's law of the case argument. "As most commonly defined, the doctrine [of the law of the case] posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." <u>Christianson v. Colt Indus. Operating Corp.</u>, 486 U.S. 800, 815-16 (1988) (internal quotation marks omitted) (alteration in original). Furthermore, when a rule of law has been decided adversely to one or more codefendants, the law of the case doctrine precludes all other codefendants from relitigating the legal issue. <u>See United States v. Schaff</u>, 948 F.2d 501, 506 (9th Cir. 1991) (relying on law of the case doctrine to preclude defendant from challenging jury instruction on appeal, which had been previously upheld in an appeal by a codefendant); <u>see also United States v. Bushert</u>, 997 F.2d 1343, 1355-56 (11th Cir. 1993) (relying on <u>Schaff</u> in holding that law of the case doctrine precluded defendant from challenging district court's denial of suppression motion where codefendants had unsuccessfully made the same challenge in prior appeal). Under the law of the case doctrine, as a practical matter, once the "decision of an appellate court establishes `the law of the case,' it `must be followed in all subsequent proceedings in the same case in the trial court or on a later appeal . . . unless: (1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work manifest injustice.'" <u>Segman v. Warner-Lambert Co.</u>, 845 F.2d 66, 69 (4th Cir. 1988) (quoting <u>EEOC v. International Longshoremen's Assoc.</u>, 623 F.2d 1054, 1058 (5th Cir. 1980)).

At their initial sentencings, the district court held the Defendants accountable for the same exact losses in determining their respective

offense levels under USSG § 2F1.1 (1991) as it did at their resentencings. In the joint brief of the Defendants in their first appeal, Merlo challenged this action by the district court as it pertained to him on the same initial basis as the Defendants now challenge the identical action by the district court at the Defendants' resentencings--no losses suffered by PUI as attributed to them in their respective revised PSRs can be counted because they successfully moved for judgments of acquittal on the PUI counts at the close of the government's case-in-chief. Although we did not separately address Merlo's argument in Aramony I, we explicitly acknowledged in section V of our opinion that we had reviewed all of the other contentions raised by the Defendants and found no reversible error. See id. at 1392.

Under law of the case principles, our rejection of Merlo's argument became the law of the case for purposes of both Merlo and Aramony. Critically, the argument at issue is a legal one, which was raised by Merlo, a codefendant of Aramony, in the Defendants' first appeal, and was rejected by this court in our decision in that appeal. Therefore, unless (1) a subsequent trial or proceeding in the district court produced substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work manifest injustice, we are precluded from addressing the argument a second time. See Segman, 845 F.2d at 69.

None of these exceptional circumstances is present, and therefore, we do not address the argument. Specifically, no subsequent trial or proceeding in the district court took place producing substantially different evidence with respect to the Defendants and PUI, and no controlling authority has since made a contrary decision of law applicable to the issues raised by the Defendants' challenge. Furthermore, our prior decision was not clearly erroneous and would not work manifest injustice if allowed to stand.

Accordingly, we turn now to consider the Defendants' second argument in support of their allegation of error with respect to the inclusion of PUI losses in calculating their respective offense levels--that the losses should not have been counted because their judgments of acquittal at the close of the government's case-in-chief effectively precluded them from being able to offer evidence to rebut the findings

10

in their respective revised PSRs detailing various frauds on PUI by them, such findings being based upon evidence presented at trial during the government's case-in-chief. This argument is without merit, because the Defendants had ample other opportunities to submit any rebuttal evidence they desired. First, the Defendants had the opportunity to object to any and all factual findings in their respective revised PSRs and to submit with their objections any rebuttal evidence, for example affidavits, they desired the district court to consider. Second, the record discloses that neither Aramony nor Merlo proffered any rebuttal evidence by this method or attempted to proffer any such evidence at their respective sentencing hearings. Under these circumstances, the Defendants cannot be heard to complain about the district court's reliance upon the findings in their respective revised PSRs regarding their conduct in defrauding PUI, which findings the district court determined were reliable. See United States v. Terry, 916 F.2d 157, 162 (4th Cir. 1990) (holding that burden is on defendant to show inaccuracy or unreliability of factual information in PSR; thus, when a defendant merely objects to the accuracy or reliability of certain factual information in the PSR without affirmatively showing the factual information at issue in the PSR is inaccurate, the district court is "`free to adopt the findings'" of the PSR "`without more specific inquiry or explanation'" (quoting United States v. Mueller, 902 F.2d 336, 346 (4th Cir. 1990)).

In sum, we affirm the district court's inclusion of the losses suffered by PUI attributable to the Defendants as set forth in the revised PSRs as relevant conduct under USSG § 1B1.3 (1991) for purposes of determining the Defendants' respective offense levels under USSG § 2F1.1 (1991).

III

The Defendants next challenge the district court's two-level increase in their respective offense levels under USSG § 2F1.1 (1991) pursuant to USSG § 2F1.1(b)(2)(B) (1991) for a scheme to defraud involving more than one victim.[7] According to the Defendants, under

_____

[7] Aramony did not originally make this argument in his separate brief in this second appeal, but Merlo did. Aramony subsequently moved for leave to adopt Merlo's argument pursuant to Federal Rule of Appellate Procedure 28(i). We grant such leave, and therefore, address the argument as one made by the Defendants jointly.

11

the "mandate rule," the district court was precluded from increasing their respective offense levels pursuant to USSG§ 2F1.1(b)(2)(B) (1991). Alternatively, the Defendants challenge the applicability of USSG § 2F1.1(b)(2)(B) (1991) on the merits. We address the Defendants' alternative arguments in turn. In our circuit, the mandate rule forecloses litigation on remand of issues decided by the district court but foregone on appeal or otherwise waived. See United States v. Bell, 5 F.3d 64, 66 (4th Cir. 1993). The mandate rule is merely a specific application of the law of the case doctrine and is applicable in the context of resentencing.[8] See id. at 66-67. The force of the mandate rule, however, can be avoided in the following extraordinary circumstances: "(1) a showing that controlling legal authority has changed dramatically; (2) that significant new evidence, not earlier obtainable in the exercise of due diligence, has come to light; or (3) that a blatant error in the prior decision will, if uncorrected, result in a serious injustice." Id. at 67 (internal quotation marks and alterations in original omitted).

Our review of the record discloses that the district court's two-level increases on remand in the Defendants' respective offense levels under USSG § 2F1.1 (1991) pursuant to USSG§ 2F1.1(b)(2)(B) (1991) did not violate the mandate rule. Critically, while the district court expressly addressed the applicability of two-level increases in the Defendants' respective offense levels under USSG§ 2F1.1 (1991) pursuant to USSG § 2F1.1(b)(2)(A) (1991) (for more than minimal planning) at their initial sentencings, it did not expressly address the applicability of alternative two-level increases pursuant to USSG § 2F1.1(b)(2)(B) (1991). Moreover, we reject the Defendants' argument that at the Defendants' initial sentencings the district court somehow impliedly addressed and rejected increases pursuant to USSG § 2F1.1(b)(2)(B) (1991), because the record discloses no such scenario. Indeed, the district court's failure at the Defendants' initial sentencings to address the applicability of USSG§ 2F1.1(b)(2)(B) (1991) is understandable in light of the fact that the Defendants' money laundering convictions drove their respective offense levels at their initial sentencings.

_____

[8] The mandate rule also forecloses litigation on remand of issues expressly or impliedly decided by an appellate court. See Bell, 5 F.3d at 66.

12

We now turn to consider on the merits the propriety of the district court's two-level increase in the Defendants' respective offense levels under USSG § 2F1.1 (1991) pursuant to USSG§ 2F1.1(b)(2)(B) (1991). USSG § 2F1.1(b)(2)(B) (1991) provides that a defendant's offense level under USSG § 2F1.1 (1991) should be increased by two levels "[i]f the offense involved . . . a scheme to defraud more than one victim . . . ." According to Application Note 3 of USSG § 2F1.1 (1991):

> "Scheme to defraud more than one victim," as used in subsection (b)(2)(B), refers to a design or plan to obtain something of value from more than one person. In this context, "victim" refers to the person or entity from which the funds are to come directly. Thus, a wire fraud in which a single telephone call was made to three distinct individuals to get each of them to invest in a pyramid scheme would involve a scheme to defraud more than one victim, but passing a fraudulently endorsed check would not, even though the maker, payee and/or payor all might be considered victims for other purposes, such as restitution.

USSG § 2F1.1, comment. (n.3) (1991). We review the district court's findings with respect to its application of USSG§ 2F1.1(b)(2)(B) (1991) in determining the Defendants' sentences for clear error, giving "due regard to the opportunity of the district court to judge the credibility of the witnesses." 18 U.S.C. § 3742(e).

Here, the record fully supports the district court's findings with respect to each defendant that he intended to obtain something of value from more than one person or entity, i.e. , UWA and the United States Government, through his participation in a fraudulent scheme. See United States v. Reyes, 908 F.2d 281, 288-89 (8th Cir. 1990) (holding that the United States Government or an agency thereof can be a victim under USSG § 2F1.1(b)(2)(B)). For example, with respect to Aramony, the record contains evidence that by submitting bogus expense receipts to UWA for reimbursement, Aramony intended to obtain money from UWA to which he was not entitled and intended to avoid paying federal income taxes on that money. With respect to Merlo, the record contains evidence that by allowing one of Aramony's assistants to use his (Merlo's) UWA corporate credit card to

13

charge an airline ticket to London so that, as desired by Aramony, one of Aramony's girlfriends could join him in London on a business trip, Merlo intended to defraud the United Way of money for the benefit of Aramony and intended to aid Aramony in avoiding payment of federal income taxes on that money.

For the reasons stated, we affirm the district court's two-level increases in the Defendants' respective offense levels under USSG § 2F1.1 (1991) pursuant to USSG § 2F1.1(b)(2)(B) (1991).

IV

Next, Aramony contends that the district court erred by increasing his offense level under USSG § 2F1.1 (1991) by two levels pursuant to USSG § 2F1.1(b)(3)(A) (1991). We disagree.

USSG § 2F1.1(b)(3)(A) (1991) provides for a two-level increase in a defendant's offense level under USSG § 2F1.1 (1991) "[i]f the offense involved . . . a misrepresentation that the defendant was acting on behalf of a charitable, educational, religious, or political organization, or a government agency . . . ." USSG § 2F1.1(b)(3)(A) (1991). Application Note 4 to USSG § 2F1.1 (1991) provides the following examples of conduct that could trigger application of USSG § 2F1.1(b)(3)(A) (1991):

> a group of defendants who solicit contributions to a non-existent famine relief organization by mail, a defendant who diverts donations for a religiously affiliated school by telephone solicitations to church members in which the defendant falsely claims to be a fund-raiser for the school, or a defendant who poses as a federal collection agent in order to collect a delinquent student loan.

See USSG § 2F1.1, comment. (n.4) (1991). In addition, the Background to USSG § 2F1.1 (1991) states that, "[u]se of false pretenses involving charitable causes and government agencies enhances the sentences of defendants who take advantage of victims' trust in government or law enforcement agencies or their generosity and charitable motives." USSG § 2F1.1, comment. (backg'd) (1991).

14

Aramony contends that by reading these quoted passages together, it is clear that a two-level increase pursuant to USSG § 2F1.1(b)(3)(A) (1991) is only appropriate if a defendant misrepresents his own ability to act on behalf of a particular organization in order to take advantage of a victim's trust in government or charitable motives. Therefore, Aramony argues, the district court's two-level increase in his offense level pursuant to USSG § 2F1.1(b)(3)(A) (1991) was inappropriate, because he did not misrepresent his authority to act on behalf of the United Way nor did he exploit the generosity and charitable motives of any party.

We reject Aramony's challenge to the district court's two-level increase in his offense level under USSG § 2F1.1 (1991) pursuant to USSG § 2F1.1(b)(3)(A) (1991), because our decision in United States v. Marcum, 16 F.3d 599 (4th Cir. 1994), makes clear that we have upheld a two-level increase pursuant to USSG § 2F1.1(b)(3)(A)**9** under analogous factual circumstances. The defendant in Marcum was a corporal in the Logan County, West Virginia Sheriff's Department and president of a charitable organization known as the Logan County Deputy Sheriff's Association, which administered public bingo games. See id. at 601. As part of his offense conduct, Marcum skimmed ten percent of the proceeds of the public bingo games for the personal enrichment of himself and other officers of the Sheriff's Department who worked the games. See id. In affirming the district court's two-level increase in Marcum's offense level under USSG § 2F1.1 pursuant to USSG § 2F1.1(b)(3)(A), we relied upon the fact that Marcum had misrepresented to the public that he was conducting the bingo games wholly on behalf of the Sheriff's Association when, in fact, he was acting in part for himself and his fellow officers. See id. at 603. Our decision in Marcum makes clear that a two level increase in a defendant's offense level under USSG§ 2F1.1 (1991) pursuant to USSG § 2F1.1(b)(3)(A) (1991) is appropriate even if the defendant did not misrepresent his authority to act on behalf of a particular organization, but rather only misrepresented that he was conducting an activity wholly on behalf of such organization.

_____

**9 Marcum** does not disclose which version of the Sentencing Guidelines Manual was at issue. However, such information is irrelevant, because at the time we issued our decision in Marcum, the language of USSG § 2F1.1(b)(3)(A) (1991) had never been amended.

15

Here, Aramony did not misrepresent his authority to act on behalf of UWA, but he did misrepresent that he was acting wholly on behalf of UWA in soliciting donations. Thus, the district court's two-level increase in Aramony's offense level under USSG § 2F1.1 (1991) pursuant to USSG § 2F1.1(b)(3)(A) (1991) was not erroneous. We, accordingly, affirm the district court in this respect.

V

Aramony next contends the district court erred in denying his motion for a discretionary downward departure based on his allegedly previously engaging in extraordinary good works. In support of his motion, Aramony submitted numerous letters from different persons listing examples of benevolent acts on his part.

A district court's discretionary refusal to depart downward in a defendant's sentence is not reviewable on appeal. See United States v. Hall, 977 F.2d 861, 863 (4th Cir. 1992). However, if the district court's refusal to depart downward rested upon its erroneous perception that it lacked the legal authority to do so, we will review the district court's decision de novo. See id. In determining whether a district court erroneously perceived that it lacked the legal authority to depart, we must construe the relevant statements of the district court in the light most favorable to the defendant. See id.

Of relevance here, USSG § 5H1.11 (1991) provides that charitable or public service "and similar prior good works are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range." Id. In short, the fact that a defendant had previously engaged in good works is a discouraged factor on which to base a downward departure. See United States v. Rybicki, 96 F.3d 754, 758 (4th Cir. 1996) (listing conduct discussed in USSG § 5H1.11 as discouraged basis for departure). A district court may exercise its discretion to depart downward on the basis of a discouraged factor "where `the factor is present to an exceptional degree or in some other way [that] makes the case different from the ordinary case where the factor is present.'" Id. (quoting Koon v. United States, 518 U.S. 81, 96 (1996)).

The only statement made by the district court on the subject is that it was not presented with any information upon which it could justify

16

a downward departure. Even evaluating this statement in the light most favorable to Aramony, we do not conclude the district court erroneously believed that it lacked the legal authority to depart downward when a defendant makes an adequate showing that he had engaged in good works to an exceptional degree or that he had engaged in good works in such a way that made his case different from the ordinary case where a defendant had engaged in good works. Accordingly, we cannot review the district court's denial of Aramony's motion for a downward departure.

VI

Lastly, the Defendants challenge their respective fines on the basis that they lack the ability to pay them.

The Sentencing Guidelines categorically state that a court "shall impose a fine in all cases except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine." USSG § 5E1.2(a) (1991). The defendant bears the burden of demonstrating his present and prospective inability to pay. See United States v. Hairston, 46 F.3d 361, 376 (4th Cir. 1995). In determining the imposition and amount of a fine under 18 U.S.C. § 3572(a), the district court must consider, among other things, the income, financial resources, and earning capacity of the defendant, as well as "the burden that the fine will impose upon the defendant" and his dependents. See 18 U.S.C. § 3572(a). "A district court may satisfy these requirements if it adopts a defendant's [PSR] that contains adequate factual findings to allow effective appellate review of the fine . . . ." United States v. Castner, 50 F.3d 1267, 1277 (4th Cir. 1995). Otherwise, the district court must set forth specifically its findings of fact on the factors set forth in 18 U.S.C. § 3572(a). See United States v. Walker, 39 F.3d 489, 492 (4th Cir. 1994). The specific findings "are necessary to assure effective appellate review of . . . fines imposed." Castner, 50 F.3d at 1277 (internal quotation marks omitted). We review a district court's factual findings with respect to the imposition of a fine under the clearly erroneous standard of review. See 18 U.S.C. § 3742(e).

Here, the respective revised PSR for each defendant did not even arguably contain current information regarding his financial condition or adequate findings with respect to the statutory factors listed in 18

17

U.S.C. § 3572(a). Furthermore, the district court did not make any findings with respect to the statutory factors listed in 18 U.S.C. § 3572(a). Under these circumstances, effective appellate review is precluded. Accordingly, we vacate the fine components of the respective judgments and remand to the district court with instructions that it: (1) order the revised PSR updated to reflect the financial condition of the Defendants; (2) reevaluate whether to impose fines on the Defendants in light of the updated information; and (3) if it decides to reimpose any fines, make the required statutory findings pursuant to 18 U.S.C. § 3572(a) in order that effective appellate review is possible.**10**

VII

In conclusion, we affirm the Defendants' sentences in all respects except for the district court's imposition of fines. We, accordingly, vacate the fine components of the respective judgments and remand for further proceedings consistent with this opinion.

<u>AFFIRMED IN PART, VACATED IN PART, AND REMANDED</u>

LUTTIG, Circuit Judge, concurring in part and dissenting in part:

I concur in the majority opinion as to Parts I to V. I write separately because I believe that it is unnecessary to remand the case to the district court to consider, for the third time, appellants' financial condition. Based on the record before us on appeal, I would conclude that appellant Aramony easily has sufficient assets to pay his assessed fine of $300,000, particularly in light of the fact (not even mentioned by the majority) that a district court recently awarded him some $2.37 million in pension benefits. <u>See Aramony</u> v. <u>United Way of Am.</u>, 1998 WL 813475 (S.D.N.Y. Nov. 20, 1998). Although, as Aramony cor-

_____

**10** Aramony also contends the district court erred by denying his motion pursuant to Federal Rule of Criminal Procedure 35, the purpose of which was to put information regarding his then current financial condition before the district court. Because we are vacating the fine component of the judgment entered by the district court with respect to Aramony, we do not address this allegation of error.

18

rectly notes, a sentencing court cannot garnish pension benefits to satisfy a fine, see Guidry v. Sheet Metal Workers Nat'l Pension Fund, 493 U.S. 365, 371-77 (1990), a court can take such benefits into account in assessing a defendant's overall income stream, and therefore his prospective ability to pay, cf. United States v. Gresham, 964 F.2d 1426, 1430 (4th Cir. 1992) (holding that value of a defendant's home could be taken into account in determining defendant's ability to pay fine, even if government could not presently enforce judgment lien against home). I would also conclude that appellant Merlo, despite his current zero to slightly negative net worth, is likely to become able to pay his assessed fine of $30,000, especially in view of the fact that his base salary, before bonuses, in the year prior to his conviction was $165,000. See Sealed Supplemental Appendix at 84.

In reaching these conclusions, I recognize that, upon resentencing, the probation officer did not revise those portions of her presentencing reports in which she considered the financial condition of the appellants, and that the district court made no additional factual findings in this regard. However, as the majority notes in its factual recitation but fails to appreciate in its substantive discussion, see ante at 3, we remanded this case to the district court only for the purpose of recalculating appellants' base offense levels on account of our reversal of their convictions for money laundering. See United States v. Aramony, 88 F.3d 1369, 1392 (4th Cir. 1996). And, moreover, at least Aramony's ability to pay, based upon public court records filed by the parties as to which we may take judicial notice and unmentioned by the majority, is demonstrably far greater today than it was at the time of the original sentencing. Rather than assign the district court (whose time, it bears remembering, is precious) the niggling task of resubstantiating the fine of one man whose net worth is several times the amount of fine imposed and the fine of another man whose professional background manifestly renders him able to pay the relatively insignificant fine assessed against him, I would simply conclude that the district court's finding regarding appellants' ability to pay is amply supported by the record before us. Accordingly, insofar as the majority opinion remands this case yet again to the district court, I respectfully dissent.