RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0001P (6th Cir.)
File Name: 03a0001p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

————————————

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

  *v.*

DANIEL S. WIANT,
  *Defendant-Appellant.*

No. 01-3443

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 00-00108—Edmund A. Sargus, Jr., District Judge.

Argued: October 31, 2002

Decided and Filed: January 2, 2003

Before: KEITH, KENNEDY, and MOORE, Circuit
Judges.

————————————

## COUNSEL

**ARGUED:** Victor D. Merullo, MERULLO, REISTER &
SWINFORD, Columbus, Ohio, for Appellant. Dale E.
Williams, Jr., ASSISTANT UNITED STATES ATTORNEY,
Columbus, Ohio, for Appellee. **ON BRIEF:** Victor D.
Merullo, MERULLO, REISTER & SWINFORD, Columbus,
Ohio, for Appellant. Dale E. Williams, Jr., ASSISTANT

UNITED STATES ATTORNEY, Columbus, Ohio, for Appellee.

―――――――――

**OPINION**

―――――――――

KENNEDY, Circuit Judge.  Daniel S. Wiant pled guilty to mail fraud, money laundering, unauthorized use of an access device, and bank fraud charges.  During his tenure as chief administrative officer of the American Cancer Society of Ohio ("ACS"), Wiant created a series of fictitious entities to which ACS funds were unlawfully transferred, used ACS funds to pay for goods and services obtained for Wiant's personal use, and created several fraudulent credit cards in the name of ACS employees.  Using his apparent authority as ACS's chief administrative officer, Wiant also instructed Fifth Third Bank to transfer nearly $7 million of ACS funds to an account in Austria, ostensibly for the purpose of funding research grants.  In reality, this account was for Wiant's personal use.

Wiant raises three issues on appeal related to his sentence: (1) whether he should have received an enhancement for misrepresenting that he was acting on behalf of a charitable organization; (2) whether he should have received an enhancement for affecting a financial institution; (3) whether he was improperly denied an opportunity to resolve his objections to the presentence report.  We affirm Wiant's sentence on all three issues.

The sentencing court's factual determinations are reviewed under the clearly erroneous standard.  *United States v. Latouf*, 132 F.3d 320, 321 (6th Cir. 1997), *cert. denied*, 523 U.S. 1101 (1998).  Legal determinations, including interpretations of the United States Sentencing Guidelines,  are reviewed *de novo*.  *United States v. Benson*, 134 F.3d 787, 788 (6th Cir. 1998), *cert. denied*, 525 U.S. 932 (1998).

## I. Misrepresentation of Action on Behalf of a Charitable Organization

The United States Sentencing Guidelines Manual § 2F1.1(b)(4)(A) provides for a 2-point enhancement if the offense involves "a misrepresentation that the defendant was acting on behalf of a charitable, educational, religious or political organization, or a government agency."[1] The plain text of the guideline clearly encompasses Wiant's offense -- Wiant misrepresented to Fifth Third Bank that he was acting on behalf of the American Cancer Society when he instructed them to transfer nearly $7 million of the charity's money to his personal bank account. That fact is not in dispute.

However, the application and background notes to the guideline arguably create some ambiguity as to the propriety of this enhancement in this case. The application notes for § 2F1.1 provide certain examples of conduct falling within the scope of the section. The notes state:

> Examples of such conduct to which this factor applies would include a group of defendants who solicit contributions to a non-existent famine relief organization by mail, a defendant who diverts donations for a religiously affiliated school by telephone solicitations to church members in which the defendant falsely claims to be a fund-raiser for the school, or a defendant who poses as a federal collection agent in order to collect a delinquent student loan.

U.S.S.G. § 2F1.1, cmt. n. 5.

The background notes for § 2F1.1 observe that "use of false pretenses involving charitable causes . . . enhances the sentence of defendants who take advantage of victims' . . . generosity and charitable motives. Taking advantage of a victim's self-interest does not mitigate the seriousness of fraudulent conduct. However, defendants who exploit

---

[1]This provision has since been moved to U.S.S.G. § 2B1.1(b)(7)(A).

victims' charitable impulses . . . create particular social harm . . . ." U.S.S.G. § 2F1.1, cmt. background.

Wiant argues that based on the nature of the examples listed in the application notes and the purpose asserted by the background notes, the § 2F1.1(b)(4)(A) enhancement should be given a narrower reading than its text literally supports. He asserts that, as a matter of law, the enhancement is meant to apply only where defendants solicit funds by misrepresentation. To hold otherwise, he says, would violate 18 U.S.C. § 3553, which directs sentencing courts to follow the Guidelines' commentary.

This Court has not yet had the opportunity to define the scope of § 2F1.1(b)(4)(A). However, the majority of circuits that have had such an opportunity have rejected a narrower reading of the enhancement such as the one proposed by Wiant in this case. *See United States v. Aramony*, 166 F.3d 655 (4th Cir. 1999); *United States v. Bennett*, 161 F.3d 171 (3d Cir. 1998), *cert. denied*, 528 U.S. 819 (1999); *United States v. Marcum*, 16 F.3d 599 (4th Cir. 1994); *United States v. Ferrera*, 107 F.3d 537 (7th Cir. 1997). *But see United States v. Frazier*, 53 F.3d 1105 (10th Cir. 1995).

We find that the majority rule rejecting a narrow reading of the enhancement is more convincing. There is not a sufficient basis in the Guidelines for reading a limitation into the text of § 2F1.1(b)(4)(A). The plain language of the rule clearly encompasses Wiant's offense, and it contains no textual support for limiting the rule to solicitation by misrepresentation. The examples listed in the application notes are obviously illustrative not exhaustive, and thus provide no mandate for limiting the scope of the enhancement's actual language.

Application of the § 2F1.1(b)(4)(A) enhancement to the facts of this case is not inconsistent with the purpose asserted in the background notes, for two reasons. First, in misrepresenting his authority to the banks, Wiant exploited the pretense that the transferred funds were to be used for funding research grants on behalf of a charitable organization.

contested factual question," *Tackett*, 113 F.3d at 614, the issue of whether Wiant's actions caused a reduction in Franklin County's donations was the opposite of "hotly contested." Wiant himself did not even raise the issue in the sentencing hearing; the government lawyer brought the unresolved objection to the court's attention. At the hearing, Wiant agreed that the objection was irrelevant because it had no effect on the Sentencing Guidelines, and expressed very little interest in pursuing his objection. Although Wiant weakly reiterated his position that the reduction in donations was merely speculative, he offered no reason whatsoever to contradict the evidence in the presentence report, and the sentencing judge found it credible. (J.A. at 185). The Sentencing Guidelines and this circuit's case law have set a low bar for the kinds of evidence sentencing judges may rely on to decide factual issues at sentencing. *See* U.S.S.G. § 6A1.3(a) (sentencing judge may consider "relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability."); *United States v. Green*, 71 F.3d 232, 235 (6th Cir. 1995) (noting that "this court has set a relatively low hurdle" for showing indicia of reliability). Wiant has given this court no reason to think that the district court was wrong in finding the evidence in the presentence report credible and sufficiently reliable. In light of these particular circumstances, the district court's treatment of this issue, however cursory, was not grounds for reversal.

Based on the forgoing analysis, we AFFIRM the defendant's sentence.

The Federal Rules of Criminal Procedure require sentencing courts to rule on all unresolved objections to the presentence report. FED. R. CRIM. PRO. 32(c)(1). In so ruling, the court may "make either a finding on the allegation or a determination that no finding is necessary because the controverted matter will not be taken into account in, or will not affect, sentencing." *Id*. This circuit requires "literal compliance" with this provision. *United States v. Tackett*, 113 F.3d 603, 613 (6th Cir. 1997). Here, the district court chose to make a finding on the allegation rather than deciding it was unnecessary to the sentencing decision. Wiant argues that the district court's finding is not supportable.[6]

"Rule 32(c)(1) 'prohibits a court faced with a dispute over sentencing factors from adopting the factual findings of the presentence report without making factual determinations of its own.'" *United States v. Bennett*, 291 F.3d 888, 899 (6th Cir. 2002) (quoting *United States v. Parrot*, 148 F.3d 629, 633 (6th Cir. 1998)); *see also Tackett*, 113 F.3d at 613-14. The sentencing court did not do much of an independent inquiry, but neither did it merely adopt the factual findings of the presentence report. The court independently determined that the allegations in the presentence report were credible. Although this circuit has been vigilant in demanding thorough analysis when sentencing courts are dealing with a "hotly

---

actions caused a reduction in Franklin County's donations. (J.A. at 176) (victim impact statement of Don McClure on behalf of the American Cancer Society).

[6] The government argues that the district court is entitled to rely on the factual allegations contained in the presentence report where the defendant fails to reiterate an objection at the sentencing hearing. *See United States v. Bennett*, 291 F.3d 888 (6th Cir. 2002) (holding that objection is waived when defendant does not orally reiterate his written objection to the presentence report before the sentencing judge). This case is distinguishable from *Bennett* because the issue was in fact raised before the sentencing judge and Wiant did at that point reiterate his objection. The fact that the government instigated the discussion should not relieve the sentencing court of its obligation under the Federal Rules of Criminal Procedure to resolve the disputed factual issue before it.

Bank officials might easily have been put at ease by the ostensibly charitable purpose asserted by Wiant. Had Wiant been employed by a private, for-profit corporation, bank officials might have been more skeptical of such an uncommonly large transfer of funds to a financial institution in Austria. Second, the social harm Wiant caused by tarnishing the reputation of the American Cancer Society is closely analogous to the social harm caused by scam artists who exploit victims' willingness to contribute to charity. Both acts tend to discourage donations and diminish charitable impulses. As the sentencing judge noted, Wiant "stole money that was given in grief and based on the hope that a cure could be found. So in a very real sense he stole the hope of the donors." (J.A. at 190). Wiant's acts are therefore consistent with the harm intended to be addressed by this enhancement.

We therefore affirm the sentencing court's application of an enhancement for misrepresentation of action on behalf of a charitable organization.

## II. Affecting a Financial Institution

U.S.S.G. § 2F1.1(b)(7)(B) provided for a 4-point enhancement if the offense "affected a financial institution and the defendant derived more than $1,000,000 in gross receipts from the offense."[2] Wiant disputes that any financial institution was "affected" by his offense. The district court found that Fifth Third Bank paid unquantified legal fees in Austria in order to recover the funds improperly transferred

---

[2] The guideline has since been amended. The new guideline states that the enhancement should apply where "the defendant derived more than $ 1,000,000 in gross receipts from one or more financial institutions as a result of the offense." U.S.S.G. § 2B1.1(b)(12)(A). The old version of the guideline was in effect at the time Wiant was sentenced, and Wiant does not suggest that the new version should apply to him.

by Wiant.[3]    Based on this fact, the court applied the enhancement.

Wiant does not dispute that exposing a financial institution to substantial, quantifiable liability costs "affects" that financial institution. *See United States v. Hartz*, 296 F.3d 595, 600 (7th Cir. 2002) (finding bank affected where defendant "used the bank to commit the fraud and as a result, the bank was forced to pay $150,000 to . . . extract itself from civil liability for its actions in inadvertently assisting [defendant's] scheme."); *United States v. Bennett*, 161 F.3d 171 (3d Cir. 1998) (financial institution affected where it paid $18 million to settle a resulting lawsuit), *cert. denied*, 528 U.S. 819 (1999); *United States v. Schinnell*, 80 F.3d 1064 (5th Cir. 1996) (financial institution affected where it is "realistically exposed to substantial potential liability" as a result of the defendant's conduct).

Wiant's argument is that, as a matter of law, there should be some threshold requirement for what it means to "affect" a financial institution for the purposes of § 2F1.1(b)(7)(B), and that in this case, Fifth Third Bank was so minimally affected that the application of a 4-point enhancement is inconsistent with the purpose of the guideline. This argument is without merit. "To affect" means "to act upon; influence; change; enlarge or abridge; often used in the sense of acting injuriously upon persons or things." BLACK'S LAW DICTIONARY 57 (6th ed. 1990). Nowhere does the term imply any *de minimis* limitation; on the contrary, the breadth of the definition indicates that the guideline is intended to encompass even minimal impacts. The seriousness of the 4-point enhancement, of course, reflects the other key limitation of this provision – that the defendant derive more than $1,000,000 in gross receipts from the offense. *See United*

---

[3] The presentence report asserted that First Third Bank paid $35,000 in legal fees. At the evidentiary hearing, Wiant objected to this fact and the government offered no basis for its truth. The district court chose to avoid this dispute by not crediting that figure and did not rely on it in applying the enhancement.

*States v. Johnson*, 130 F.3d 1352 (9th Cir. 1997) (noting that the "potential for broad applicability, however, exists only within a very narrow subset of circumstances: the defendant must have been convicted of an offense involving fraud or deceit and must have received more than $ 1,000,000 from that offense.").[4]

The district court accepted that there was no clear evidence in the record indicating how much money Fifth Third Bank paid in attorney fees, apparently deciding that whatever the amount, the expenditure demonstrated that Wiant's offense "affected" a financial institution. In reviewing the district court's application of the guideline to the facts of this case, we apply a deferential standard of review. *Buford v. United States*, 532 U.S. 59 (2001); *United States v. Ennenga*, 263 F.3d 499, 502 (6th Cir. 2001). Giving due deference to the district court, there is no basis for reversing its determination that Wiant's offense affected Fifth Third Bank. We therefore affirm the application of this enhancement to Wiant's sentence.

## III.  Objections to the Presentence Report

Wiant argues that he was sentenced based on unreliable evidence that his actions caused a temporary reduction in Franklin County, Ohio's charitable donations to the American Cancer Society. He speculates that although the matter was not relied upon to set the sentencing range, and is nowhere specifically mentioned as a factor in sentencing, the court may have considered it as a factor in setting Wiant's sentence within the guideline range.[5]

---

[4] The nearly $7 million stolen by Wiant was actually transferred to his Austrian bank account, although the fraud was exposed in time and the money was recovered.

[5] The sentencing judge did take note of the fact that Wiant "caused a very real but largely incalculable loss to the income as well as the public standing of the American Cancer Society." (J.A. at 190). However, there was overwhelming evidence of this fact independent of whether Wiant's