**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
             *Plaintiff-Appellee,*

         v.

BERNARD JOHN LAMBERT, JR.,
             *Defendant-Appellant.*

No. 07-30060

D.C. No.
CR-06-00063-SEH

OPINION

Appeal from the United States District Court
for the District of Montana
Sam E. Haddon, District Judge, Presiding

Submitted July 13, 2007*
Seattle, Washington

Filed August 16, 2007

Before: Arthur L. Alarcón, Michael Daly Hawkins, and
Kim McLane Wardlaw, Circuit Judges.

Opinion by Judge Hawkins

---

*This panel unanimously finds this case suitable for decision without
oral argument. *See* Fed. R. App. P. 34(a)(2).

**COUNSEL**

Helge Naber, Naber PC, Great Falls, Montana, for the defendant-appellant.

Carl E. Rostad, Assistant United States Attorney, Great Falls, Montana, for the plaintiff-appellee.

**OPINION**

HAWKINS, Circuit Judge:

Bernard J. Lambert appeals the sentence imposed following his guilty plea to conspiracy to defraud the United States, in violation of 18 U.S.C. § 286, arising from his submission of, and payment for, invoices to the Fort Peck Indian Tribes Education Department ("Education Department") for educational grant-writing services Lambert never performed. Specifically, Lambert challenges the district court's application of a two-level enhancement under United States Sentencing Guideline ("U.S.S.G.") § 2B1.1(b)(8)(A) after it concluded that Lambert's offense "involved . . . a misrepresentation that [he] was acting on behalf of a[n] . . . educational organization . . . or a governmental agency."

We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(2), and we affirm.

**FACTUAL AND PROCEDURAL HISTORY**

The Indian Self-Determination Act ("the Act") requires the federal government, at the request of a tribe, to provide fund-

ing for certain tribal services traditionally the direct responsibility of the federal government. 25 U.S.C. § 450f. Under the Act, the Fort Peck Tribes ("the Tribes")[1] entered into a so-called "638 Contract,"[2] whereby the United States agreed to provide $787,733 for the Tribes' Education Department from October 1, 2001 to September 30, 2002, followed by an additional $360,127 the next year.

Lambert's wife, Desiree, was the Director of the Tribes' Education Department and, as such, responsible for managing funds provided under the Tribes' 638 contract. Over a 13-month period, she and Lambert conspired to submit fraudulent invoices, and receive payment from 638 contract funds, for writing grant applications for the Education Department. Although Lambert received $12,000 for ostensibly writing ten grant applications on the Education Department's behalf, the applications were never received—or funded—by the various corporations and agencies to which Lambert purported to have applied. Lambert admitted that a portion of the $12,000 was used to pay his daughter's college tuition, but claimed that he actually wrote all ten applications and provided them to Desiree on a diskette. The diskette has never surfaced.

Lambert pled guilty to conspiracy to defraud the United States, in violation of 18 U.S.C. § 286. His presentence report recommended a six-to-twelve month sentence based on a total offense level of ten and Lambert's Criminal History Category I. The total offense level was calculated based on the base offense level of six for violation of 18 U.S.C. § 286, a four-level increase based on the amount of loss under U.S.S.G. § 2B1.1(b)(1)(C), a two-level decrease for acceptance of responsibility, and a two-level increase because the offense involved a misrepresentation that Lambert was acting on

___

[1]The Tribes include members of the Assiniboine and Sioux tribes of the Fort Peck Indian Reservation in Montana.

[2]"638" refers to the Act's public law number. *See* Pub. L. No. 93-638, 88 Stat. 2203 (1975) (codified at 25 U.S.C. §§ 450 *et seq.*).

behalf of an educational organization under U.S.S.G.
§ 2B1.1(b)(8)(A).

At sentencing, Lambert objected to the two-level increase
under § 2B1.1(b)(8)(A), contending that, "because he submit-
ted the invoices under his own name, [he] did not act on
behalf of an educational institution or as a representative of
the [Education Department]." The district court received sen-
tencing memoranda from both parties addressing Lambert's
objection, heard argument, and concluded that the enhance-
ment applied because "the gravamen of the offense of convic-
tion . . . is that [Lambert] wrote and indeed got paid for
writing some ten grant applications on behalf of the [T]ribe's
education department . . . . He was acting or purporting to act
on behalf of the [T]ribe . . . . [And] that clearly fits within the
parameters of Guideline 2B1.1(b)(8) . . . ." The court then
heard additional argument concerning the appropriate sen-
tence, including Lambert's allocution in which he "apolo-
gize[d] to the . . . Tribes," stating: "They had faith in me and
I wronged them."

The district court sentenced Lambert to twelve months in
prison. In this appeal, Lambert challenges only the two-level
enhancement under § 2B1.1(b)(8)(A). Without the enhance-
ment, Lambert's offense level would be eight and his Guide-
line range zero-to-six months, though the statutory maximum
for conviction under 18 U.S.C. § 286 remains ten years.

## STANDARD OF REVIEW

We review "the district court's interpretation of the Sen-
tencing Guidelines de novo, the district court's application of
the Sentencing Guidelines to the facts of th[e] case for abuse
of discretion, and the district court's factual findings for clear
error." *United States v. Kimbrew*, 406 F.3d 1149, 1151 (9th
Cir. 2005). "The Guidelines, including enhancements, are
ordinarily applied in light of available commentary, including
application notes." *United States v. Staten*, 466 F.3d 708, 715

(9th Cir. 2006) (citing *Stinson v. United States*, 508 U.S. 36, 38 (1993)). Such commentary is generally authoritative "unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson*, 508 U.S. at 38.

## DISCUSSION

Lambert raises two objections to the district court's application of § 2B1.1(b)(8)(A). Relying on § 2B1.1's application notes and *United States v. Frazier*, 53 F.3d 1105 (10th Cir. 1995), he first argues that the enhancement does not apply to him because he did not exploit the generosity, charitable motives, or trusting impulses of his victim by misrepresenting his authority to act on behalf of a statutorily-designated entity.

He also argues that—even if § 2B1.1(b)(8)(A) can be applied regardless of the defendant's appeal to the victim's charitable impulses (as several circuits have concluded)—it *still* requires a misrepresentation by the defendant as to his capacity to act on behalf of the qualifying entity and, because he submitted the invoices under his own name and only to his co-conspirator wife, no such misrepresentation occurred here.

We conclude that the district court did not err in determining that Lambert's conduct triggered the enhancement.

## I.   Background: U.S.S.G. § 2B1.1(b)(8)(A)

### A)   Current Version

Guideline § 2B1.1(b)(8)(A) states, in pertinent part:

> If the offense involved . . . a misrepresentation that the defendant was acting on behalf of a charitable, educational, religious, or political organization, or a government agency . . . , increase by 2 levels.

The Guideline's application notes clarify that:

> Subsection (b)(8)(A) applies in any case in which the *defendant represented* that the defendant was *acting to obtain a benefit on behalf of* a charitable, *educational*, religious, or political organization, or a *government* agency (regardless of whether the defendant actually was associated with the organization or government agency) when, in fact the defendant intended to divert all or part of that benefit (*e.g.*, for the defendant's personal gain).
>
> Subsection (b)(8)(A) applies, *for example*, to the following:
>
>> (i)  A defendant who solicited contributions for a non-existent famine relief organization.
>>
>> (ii) A defendant who solicited donations from church members by falsely claiming to be a fundraiser for a religiously affiliated school.
>>
>> (iii) A defendant, chief of a local fire department, who conducted a public fundraiser representing that the purpose of th[e] fundraiser was to procure sufficient funds for a new fire engine when, in fact, the defendant intended to divert some of the funds for the defendant's personal benefit.

U.S.S.G. § 2B1.1 cmt. n.7 (2006) (emphasis added). The Guideline's Background Note further explains that:

> Use of false pretenses involving charitable causes and government agencies enhances the sentences of defendants who take advantage of victims' trust in

government or law enforcement agencies or the generosity and charitable motives of victims. Taking advantage of a victim's self-interest does not mitigate the seriousness of fraudulent conduct; rather, defendants who exploit victims' charitable impulses or trust in government create particular social harm.

*Id.* cmt. background.

### B)   *Previous Versions*

Because relevant precedent from our sister circuits analyzes prior versions of § 2B1.1(b)(8)(A), it is useful to compare the various versions of the Guideline. In November 2001, U.S.S.G. § 2F1.1 was consolidated into § 2B1.1, resulting in the addition of current subsection (b)(8)(A) to § 2B1.1. Prior to this consolidation, the two-level enhancement for "misrepresentation that the defendant was acting on behalf of a charitable, educational, religious or political organization, or a government agency" was located at § 2F1.1(b)(4)(A).[3] Although, the Guideline language is identical in both versions, the commentary differs slightly.

The application notes to former § 2F1.1 stated:

Subsection (b)(4)(A) provides an adjustment for a *misrepresentation that the defendant was acting on behalf of a charitable, educational, religious or political organization, or a government agency.* Examples of conduct to which this factor applies *would include* a group of defendants who solicit con-

---

[3]Subsection 2F1.1(b)(3) was renumbered § 2F1.1(b)(4) in 1998 to make room for an enhancement for an offense committed through mass marketing. Thus, in pre-November 1, 1998 sentences, the relevant predecessor Guideline is § 2F1.1(b)*(3)*(A), while in sentences entered after November 1, 1998, the relevant predecessor Guideline is § 2F1.1(b)*(4)*(A). The commentary to the Guideline did not change in this transition.

tributions to a non-existent famine relief organization by mail, a defendant who diverts donations for a religiously affiliated school by telephone solicitations to church members in which the defendant falsely claims to be a fund-raiser for the school, or a defendant who poses as a federal collection agent in order to collect a delinquent student loan.

U.S.S.G. § 2F1.1 cmt. n.5 (2000) (emphasis added).

There are three primary differences between this note and the current version: (1) the current version specifies that a defendant must have been "acting *to obtain a benefit* on behalf of" an enumerated entity, while the previous version stated only that the defendant must have been "acting on behalf of" such an entity; (2) the current version specifies the subsection "applies, *for example*, to" the hypothetical scenarios provided, whereas the prior version stated only that the subsection "would include" the hypothetical conduct; and (3) the previous version does not admonish that the enhancement applies "regardless of whether the defendant actually was associated with the organization or government agency." *Compare* U.S.S.G. § 2F1.1 cmt. n.5 (2000), *with* U.S.S.G. § 2B1.1 cmt. n.7 (2006) (emphasis added).

Former § 2F1.1's background note also differs slightly from the current version, insofar as it begins by noting that the Guideline was "designed to apply to a wide variety of fraud cases," whereas the current version simply states the specific types of cases the Guideline covers without reference to the breadth of conduct reached. *Compare* U.S.S.G. § 2F1.1 cmt. background (2000), *with* U.S.S.G. § 2B1.1 cmt. background (2006).

## II.   Appeal to Charitable Impulses

Lambert contends § 2B1.1(b)(8)(A) is inapplicable because it applies only where a defendant's misrepresentation exploits

the generosity, charitable motives, or trusting impulses of the victim and that his crime employed no such exploitation. Although Lambert's narrow reading of the statute seemingly finds support in the Tenth Circuit, *see Frazier*, 53 F.3d at 1113, it has been rejected (at least implicitly) by the Third, Fourth, Sixth, and Seventh Circuits, *see United States v. Bennett*, 161 F.3d 171, 191-92 (3d Cir. 1998); *United States v. Aramony*, 166 F.3d 655, 664 (4th Cir. 1999); *United States v. Wiant*, 314 F.3d 826, 829 (6th Cir. 2003); *United States v. Ferrera*, 107 F.3d 537, 542 (7th Cir. 1997).[4]

## A) The Tenth Circuit Approach

In *Frazier*, the Tenth Circuit reviewed the application of § 2B1.1(b)(8)(A)'s predecessor to a defendant's sentence for misapplying property and making false statements to a government agency. Frazier was president of a nonprofit corporation providing technical support and social services to Native Americans. As president, Frazier misappropriated government funds intended for training services to purchase new computers for the corporation. 53 F.3d at 1108-09. A divided panel reversed the district court's application of the enhancement, concluding that the "conduct intended to fall within the scope of the guideline is exploitative conduct which induces victims to act upon their charitable or trusting impulses *due to the*

---

[4]Lambert also contends *United States v. Berger*, 224 F.3d 107 (2d Cir. 2000), implicitly adopted *Frazier*'s narrow interpretation, but a review of *Berger* belies any such contention. Although the *Berger* court noted that "the Background Notes suggest the enhancement is meant to punish 'defendants who exploit victims' charitable impulses or trust in government,' " it ultimately concluded the enhancement applied to the defendants' student loan fraud on the federal government, holding: "We see no persuasive reason to look beyond [the Guideline's] plain meaning, nor do we think the [Guideline's] supporting materials . . . counsel a different result." *Id.* at 120-21. The court specifically rejected the argument that the Guideline "appl[ies] only where a defendant exploits the altruism of private individuals, not where he simply defrauds government agencies." *Id.* at 120. As such, if anything, *Berger* seemingly supports broader application of the enhancement.

*defendant's misrepresentation that he has the authority to act on behalf of a charitable, educational, religious or political organization or government agency.*" *Id.* at 1113 (emphasis added).

Because Frazier was president of the nonprofit corporation, the court concluded that he in fact had authority to act on its behalf and therefore did not "exploit[ ] his victim by claiming to have authority which in fact does not exist," thus rendering the enhancement inapplicable. *Id.* In so holding, the Tenth Circuit noted that the hypothetical examples contained in the Guideline commentary each "involve[d] conduct that induce[d] the victim to contribute funds because the defendant ha[d] falsely led the victim to believe that he ha[d] the capacity to act as an agent or employee for the charitable, educational, or political organization or government agency." *Id.* The court rejected *United States v. Marcum*, 16 F.3d 599 (4th Cir. 1994), in which the Fourth Circuit "applied the guideline to conduct which did not involve a false representation of the defendant's authority to act on behalf of the charitable organization," concluding that "the Fourth Circuit expanded the scope of the guideline beyond that which was contemplated by the Sentencing Commission." *Frazier*, 53 F.3d at 1114 & n.8.

Alternatively, the *Frazier* court concluded that, even if the Guideline applied where a defendant does not misrepresent his authority, it did not apply to Frazier because he "did not exploit the 'generosity' and 'charitable motives' of his victim" and "did not gain personally from his misapplication of [government monies]." *Id.* at 1114.

**[1]** Although Lambert contends *Frazier* stands for the proposition that the enhancement applies only where a defendant appeals to a victim's trust or charitable motive, the holding of *Frazier* is limited to its conclusion that the enhancement applies only where a defendant has misrepresented his authority to act. The court's discussion of charitable motive and per-

sonal gain is dicta and thus provides little support for Lambert's claims. *See Ferrera*, 107 F.3d at 542. In any event, as discussed below, every other circuit to reach the issue has rejected the notion that the enhancement applies only where the defendant intended to exploit the generosity, trust, or charitable motives of his victim.

## B) *The Majority Approach*

All other circuits to reach the question have declined to adopt *Frazier*'s narrow construction of the enhancement. In *Ferrera*, the Seventh Circuit distinguished *Frazier* by noting that its holding rested on the absence of a misrepresentation of authority to act, whereas Ferrera had clearly misrepresented such authority. 107 F.3d at 541. In addition, the court noted that the hypothetical examples contained in the commentary to § 2B1.1(b)(8)(A)'s predecessor "could not be exhaustive, as the devious mind would easily escape that limited net." *Id.* (also noting that commentary states "[e]xamples . . . would include"). Finally, the court refused to read *Frazier* as imposing a requirement that defendants "exploit their victims' charitable impulses to be eligible for the enhancement." *Id.* at 543.

In *Bennett*, the Third Circuit similarly rejected a narrow interpretation of the enhancement as applying "only when a defendant falsely claims to be soliciting on behalf of a genuine charity with which the defendant has no connection, solicits on behalf of a fictitious charity, or uses a position as the actual representative of genuine charitable organization to embezzle money." 161 F.3d at 191. The court concluded that the application note examples were "illustrative, not exhaustive," thereby parting company with the *Frazier* court. *Id.* The court further noted that the enhancement applied "[r]egardless of [the victims'] motivation in giving money," suggesting that exploitation of charitable impulses is unnecessary.[5] *Id.*

---

[5]It should be noted that the *Bennett* court also distinguished *Frazier* in part because Bennett *had* exploited his victims' charitable impulses. *Id.* at

In *Aramony*, the Fourth Circuit reaffirmed its holding in *Marcum*, 16 F.3d 599, concluding that the enhancement applies "even if the defendant did not misrepresent his authority to act on behalf of a particular organization." 166 F.3d at 664. The court also rejected Aramony's argument that the enhancement did not apply because he did not "exploit the generosity and charitable motives of any party." *Id.*

**[2]** Finally, in *Wiant*, the Sixth Circuit noted that "the majority of circuits . . . have rejected a narrow[ ] reading of the enhancement" and dismissed Wiant's contention that the Guideline's commentary limits the enhancement to solicitation of funds by misrepresentation. 314 F.2d at 829 (collecting cases). Discussing the commentary's focus on exploiting charitable impulses, the court concluded that "the plain language of the rule . . . contains no textual support" for such a limitation and that "[t]he examples listed in the application notes are obviously illustrative not exhaustive, and thus provide no mandate for limiting the scope of the enhancement's actual language." *Id.*

## C)  *Changes in the Guideline Commentary*

As discussed above, although the Guideline text has remained the same over the years, the Guideline commentary has evolved slightly. At least two of these changes lend support to the majority view rejecting a narrow interpretation of the Guideline's reach. First, the current commentary even more clearly indicates that the hypothetical examples are not intended to be an exhaustive list. *Compare* U.S.S.G. § 2F1.1 cmt. n.5 (2000) ("Examples of conduct to which this factor applies *would include* . . . ." (emphasis added)), *with* U.S.S.G. § 2B1.1 cmt. n.7 (2006) ("Subsection (b)(8)(A) applies, *for example*, to the following . . . ." (emphasis added)).

---

192. The *Bennett* court therefore did not need to decide whether the Guideline contains an exploitation requirement in order to reach its decision.

**[3]** Second, the application note now clearly states that the enhancement applies "regardless of whether the defendant actually was associated with the organization." U.S.S.G. § 2B1.1cmt. n.7. This change indicates that Congress, in enacting the current iteration, intended the enhancement to apply where the defendant misrepresents his *intentions*, regardless of whether he also misrepresents his *authority to act*, effectively abrogating the decision in *Frazier*.[6]

## D)   *Analysis*

**[4]** There is little if any support in the Guideline text or commentary for Lambert's contention that the enhancement applies only where a defendant exploits charitable motives or trust. As the majority of circuits to reach the issue has held, the examples provided in the application notes suggesting that exploitation of a charitable impulse is required are just that—examples. They are not intended as an exhaustive list of cov-

---

[6]The remaining changes to the Guideline commentary have no impact on our analysis. Though the current commentary's specification that the Guideline apply only where a defendant is acting "*to obtain a benefit* on behalf of" an enumerated entity arguably narrows the Guideline's reach, *see* U.S.S.G. § 2B1.1 cmt. n.7 (emphasis added), the change is of no import in this case because if Lambert is deemed to have acted "on behalf of" a specified entity, *see infra*, he also acted "to obtain a benefit" for it.

Similarly, the replacement of the former background note's preface that the Guideline "is designed to apply in a *wide variety* of fraud cases" with the current background note's statement that the Guideline "covers offenses involving theft, stolen property, property damage or destruction, fraud, forgery, and counterfeiting . . . ." was undoubtedly motivated by the 2001 consolidation of § 2F1.1 with § 2B1.1, resulting in a combined Guideline that covers more than just fraud cases, and cannot be interpreted to indicate that Congress intended a narrower reach for the Guideline. *Compare* U.S.S.G. § 2F1.1 cmt. background (2000) (emphasis added), *with* U.S.S.G. § 2B1.1 cmt. background (2006).

Nonetheless, to the extent prior cases expressly relied on the former note's now-omitted language in rejecting a narrow interpretation of the Guideline's reach—*see, e.g.*, *Bennett*, 161 F.3d at 191; *Ferrera*, 107 F.3d at 541—we cannot rely on this aspect of their reasoning.

ered conduct and do not preclude application of the enhancement in other situations. Though generally sufficient to trigger the enhancement, a defendant's exploitation of his victim's charitable impulses is not required. This conclusion is all the more apparent when we consider that the background note specifically contemplates applying the enhancement where the victim acts purely out of self-interest. U.S.S.G. § 2B1.1 cmt. background ("Taking advantage of a victim's self-interest does not mitigate the seriousness of fraudulent conduct . . . .").

**[5]** Finally, to the extent the commentary can be read to establish an exploitative requirement, it is inconsistent with the plain language of the Guideline itself and need not be followed. *See Stinson*, 508 U.S. at 38; *United States v. Sarbia*, 367 F.3d 1079, 1084 (9th Cir. 2004). The Guideline's plain language requires only that the offense involve a misrepresentation that the defendant was acting on behalf of a specified type of organization. As the majority of circuits has found, support for narrowing it further simply cannot be found in the Guideline text.[7] Accordingly, Lambert's claim that § 2B1.1(b)(8)(A) applies only where a defendant exploits charitable impulses fails.

## III.   Application of § 2B1.1(b)(8)(A)

Lambert further argues that § 2B1.1(b)(8)(A)—even if applicable regardless of the defendant's appeal to the victim's charitable impulses—nonetheless does not apply to him because he did not represent that he was acting on behalf of a specified entity. Rather, Lambert contends, he submitted the

---

[7]Even if we were to conclude that the Guideline contains an exploitative requirement, Lambert's conduct would likely qualify insofar as his misrepresentation to the Education Department—that he had submitted grants on its behalf for education funding—"took advantage of the government's generosity" in providing 638 contract funds to the Tribes. *See Berger*, 224 F.3d at 121.

grant application invoices under his own name, received payment under his own name, and at no time misrepresented his affiliation with, or capacity to act on behalf of, the Education Department.

**[6]** Lambert's argument misses the mark. Lambert conspired to defraud the United States by specifically asserting that he had done work on behalf of the Tribes' Education Department—*i.e.*, he purported to have submitted ten grant applications for its benefit. He received payment from the Tribes (drawn from its 638 contract funds) because they believed he had done work on their behalf. Lambert musters no authority to support his argument that submitting the invoices under his own name somehow absolves him of any misrepresentation, and we can find none. Although the facts of his case may be somewhat unique, as the district court noted, "the gravamen of the offense of conviction" was Lambert's misrepresentation of work done on the Education Department's behalf.

Furthermore, because Lambert was convicted of conspiracy, he can properly be held accountable for the reasonably foreseeable acts of his co-conspirator wife. U.S.S.G. § 1B1.3(a)(1)(B). As such, even if his own actions did not constitute a misrepresentation that he was acting (or had acted) on behalf of the Education Department, then surely his wife's actions—in authorizing payment and issuing the checks—did, and the enhancement can properly be applied.

**[7]** In addition, Lambert's contention that he made no "direct statements toward the ultimate victims of his offense concerning his affiliation or capacity as a representative of the [Education Department]" is irrelevant. Lambert was not convicted of *actually* defrauding the United States; he was convicted of *conspiracy* to defraud the United States. Lambert's misrepresentation to the Education Department was the first overt step in this conspiracy, which in turn led to the foresee-

able consequence that the Tribes would pay Lambert from 638 contract funds, and the United States would be defrauded.[8]

**[8]** In sum, the district court did not abuse its discretion in applying a two-level enhancement under § 2B1.1(b)(8)(A) because Lambert's conduct fits within the parameters of § 2B1.1(b)(8)(A).[9]

## CONCLUSION

Neither the Guideline text nor commentary supports Lambert's argument that § 2B1.1(b)(8)(A) applies only where a defendant exploits the charitable impulses of his victim, and the Tenth Circuit's decision to the contrary can be distinguished in light of subsequent Guideline changes. Accordingly, Lambert's conduct—misrepresenting that he had submitted grant applications on the Education Department's behalf and receiving payment—falls within the plain language of § 2B1.1(b)(8)(A), and the district court did not abuse its discretion in applying the enhancement.

**AFFIRMED**.

---

[8]Lambert's lack of communication with potential grantors is of no import. Indeed, it would be exceedingly odd if the very reason Lambert's conduct was fraudulent—*i.e.*, because he did not submit the applications to potential grantors—somehow shielded him from enhanced liability for his misrepresentation. In any event, the potential grantors were not the victims of Lambert's crime, and Lambert's statements to the Education Department (as well as his wife's additional actions) clearly constitute a misrepresentation that he was acting on the Education Department's behalf.

[9]The parties do not dispute that the Education Department is a qualifying entity under § 2B1.1(b)(8)(A). It would seemingly qualify as both an "educational organization" and a "government agency" (by virtue of the Tribes' sovereignty).