IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 14, 2008

No. 06-51577

Charles R. Fulbruge III
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JANE REASOR, a/k/a SAN JUANITA RANGEL REASOR,

Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Texas

Before HIGGINBOTHAM, STEWART, and SOUTHWICK, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Defendant-Appellant Jane Reasor pled guilty to 28 counts of using the forged security of one organization to deceive another organization, in violation of 18 U.S.C. § 513(a); three counts of mail fraud, in violation of 18 U.S.C. § 1341; one count of bank fraud, in violation of 18 U.S.C. § 1344; and one count of making a false statement on a credit application, in violation of 18 U.S.C. § 1014. She was initially sentenced to concurrent terms of 42 months of imprisonment. Reasor appealed and a panel of this court vacated her 28 forgery convictions and remanded her case to the district court for resentencing. United States v. Reasor, 418 F.3d 466 (5th Cir. 2005). Reasor was resentenced to concurrent terms of 37 months. In the present appeal, she challenges her sentence on two

grounds: first, she contends that the district court's determination of the total amount of loss was clearly erroneous because certain amounts were improperly attributed to her; second, she argues that the district court erred by applying the guideline enhancement for misrepresenting that she was acting on behalf of a religious organization. For the following reasons, we AFFIRM.

## I. Factual and Procedural History

Reasor was employed as the office manager of St. Dominic's Catholic Church in San Antonio from approximately 1993 until 2000. During that period, she misused church funds for her personal gain, using checks from the church's general fund account and, Father Paul Cleary's, the parish priest, stipend account, on which she was a signatory. Reasor forged signatures and falsified endorsements on checks. She also made out checks to herself, various individuals and entities, which she then cashed. Many of the checks were cashed at La Fiesta supermarket next door to the church. Reasor also misused the church's funds and Fr. Cleary's name in other ways for her financial benefit.

After pleading guilty, Reasor motioned to withdraw her guilty pleas for the 28 forgery counts under 18 U.S.C. § 513(a), arguing that there was an insufficient factual basis upon which to base her guilty plea. According to Reasor, St. Dominic's was not an "organization" for purposes of § 513(c)(4) because it did not operate in interstate commerce and its activities did not affect interstate commerce and because there was an insufficient factual basis to support those convictions. The district court denied Reasor's motion. This court vacated the convictions, holding that there was no factual basis to support the forgery charges and noting that the vacated convictions should affect the calculation of all of Reasor's concurrent sentences due to grouping rules. United States v. Reasor, 418 F.3d 466, 478-79 (5th Cir. 2005). The court further determined that the application of U.S.S.G. § 2F1.1(b)(5)(c)(I) of the 2000 version of the Sentencing Guidelines violated the Ex Post Facto Clause and directed that

Reasor should be resentenced under the appropriate version of the guidelines. Id. at 479. Finally, this court concluded that Reasor's challenge to the loss calculations relevant to her sentencing range were not ripe for review because her case was being remanded for resentencing. Id. at 479 n.12.

For resentencing purposes, the presentence report ("PSR") attributed losses totaling more than $438,000 to Reasor, including $348,873.29 in losses to St. Dominic's; $2,137.27 in losses to the John Deere Company; $8,803.77 in losses to Bank One; $7,106.71 in losses to Norwest Bank; $25,000 in losses to the Catholic Mutual Relief Society; $3,000 in losses to Archbishop Patrick Flores; and $44,010.06 in losses to Wells Fargo Bank. The probation officer used the 1998 version of the former § 2F1.1 to calculate Reasor's offense level. The probation officer established Reasor's base offense level as six, to which she added nine levels for losses of more than $350,000 but less than $500,000, two levels because the offense involved more than minimal planning and more than one victim, and two levels because the offense involved the misrepresentation that Reasor was acting on behalf of a religious organization. Reasor's adjusted offense level was 19. Her criminal history score was one, placing her in criminal history category I. Her guideline sentencing range was 30-37 months of imprisonment.

The district court reduced the amount of loss to $387,981.09. The district court also overruled Reasor's objection to the two-level adjustment for misrepresenting herself as acting on behalf of a religious organization. The district court imposed five concurrent sentences of 37 months of imprisonment. Reasor filed a timely notice of appeal.

## II. Discussion

### A.

In her first point of error, Reasor contends that the district court erred in determining the amount of loss attributable to her. Reasor concedes that her scheme involved cashing checks made payable to church funds and church employees at La Fiesta supermarket. She further concedes that she took checks payable to vendors, and church employees and cashed those at the same store for cash. She contends that these checks were easy to pick out because they were stamped with the grocery store's endorsement. However, she contends that the fraud loss attributable to her should be reduced by $122,217.27 to $316,713.82 because the government did not establish that she was responsible for certain other checks, namely those checks negotiated by church vendors and those signed by the parish priest bearing a stamped, restrictive endorsement. Moreover, she posits that there is no evidence linking her to checks from a stipend account which Reasor held jointly with the parish priest; a bank charge; and money owed to John Deere for a lawn mower.

The calculation of amount of loss is a factual finding reviewed for clear error. United States v. Humphrey, 104 F.3d 65, 71 (5th Cir. 1997). Amount of loss need not be determined with precision. United States v. Edwards, 303 F.3d 606, 645 (5th Cir. 2002). Rather, "[i]n order to satisfy this clear error test all that is necessary is that the finding be 'plausible in light of the record as a whole.'" Id. (quoting Humphrey, 104 F.3d at 71). "The presentence report is considered reliable evidence for sentencing purposes." United States v. Clark, 139 F.3d 485, 490 (5th Cir.1998). "If no relevant affidavits or other evidence is submitted to rebut the information contained in the PSR, the court is free to adopt its findings without further inquiry or explanation." United States v. Jefferson, 258 F.3d 405, 413 (5th Cir.2001).

The district court's finding that the disputed loss was attributable to Reasor based on information contained in the PSR is not clearly erroneous. Here, information in the PSR was based on interviews with Fr. Cleary, employees of La Fiesta supermarket, bank employees, and the FBI's investigation of all of the relevant records and review of individual checks. Additionally, the factual basis for Reasor's plea indicated that she engaged in a fraudulent scheme using St. Dominic's general fund account and the stipend account from 1993 to 2000, largely using checks that were written so as to appear indistinguishable from legitimate checks. Although many of those checks were cashed at La Fiesta supermarket, the way in which Reasor committed her offenses makes a precise loss calculation difficult and she submitted no evidence to show that the information in the PSR was materially untrue.[1]  See United States v. Huerta, 182 F.3d 361, 364 (5th Cir. 1999) (holding that the defendant bears the burden of demonstrating that the PSR is inaccurate).  Accordingly, the district court was free to adopt the PSR without further explanation.  Jefferson, 258 F.3d at 413.

With regard to the cost of the John Deere tractor included in the loss calculation, Reasor contends that she was not responsible for that charge because another employee took the tractor and never returned it.  The record reveals that the credit application contained Fr. Cleary's forged signature, and that Fr. Cleary denied receiving the tractor.  The district court decided to count the John Deere amount because it did not go to the benefit of the church.  Again, Reasor has failed to submit any evidence rebutting the PSR's inclusion of this amount.  Further, this court has held that "unsworn assertions by the defendant

---

[1] Reasor introduced evidence regarding Fr. Cleary's personal travel and activities and bills arising as a result.  However, Reasor did not show that the amounts paid for Fr. Cleary's benefit were actually included in the loss amount or that, even if they were, that they rendered the PSR's loss calculations materially inaccurate.  See Angulo, 927 F.2d at 205.

are unreliable and not to be considered." United States v. Gray, 105 F.3d 956, 969 (5th Cir. 1997).

Finally, Reasor seeks to reduce her loss calculation by $4,010.60. The prosecutor stated that the account was overdrawn by that amount and that the church had to pay that amount to the bank to bring the stipend account back into balance. Reasor responded that she had never seen a check indicating that the church had balanced the account. The Wells Fargo bank statement in question indicates a "charge-off credit w/o fee" in the amount of $4,010.06. Reasor has proffered no evidence to show this amount was improperly included her loss amount.

Because Reasor offered no evidence to rebut the information contained in the PSR regarding the various checks, the John Deere tractor, or the bank charge, and we find that the district court's loss calculation was "plausible in light of the record as a whole," we AFFIRM the district court's findings with respect to this issue.

## B.

Reasor next contends that the district court erred by adjusting her offense level for misrepresenting herself as acting on behalf of a religious organization, pursuant to former § 2F1.1(b)(4)(A), which provides for a two-level upward adjustment "[i]f the offense involved . . . a misrepresentation that the defendant was acting on behalf of a charitable, educational, religious, or political organization, or a government agency."[2] She raised the following objections: (1)

---

[2] The relevant guideline commentary of the 1998 version of § 2F1.1(b)(4)(A) provided:

> Subsection (b)(4)(A) provides an adjustment for a misrepresentation that the defendant was acting on behalf of a charitable, educational, religious, or political organization, or a government agency. Examples of conduct to which this factor applies would include a group of defendants who solicit contributions to a non-existent famine relief organization by mail, a defendant who diverts donations for a religiously affiliated school by telephone solicitations to church members which the

she argues that her conduct in cashing checks at La Fiesta and at her bank were commercial in nature; (2) she contends that there is no evidence that she misrepresented her authority when cashing checks or that she represented that she was acting to obtain a benefit for the church; and (3) she argues that she did not exploit any altruistic motivations when she cashed checks on the church's account.

Reasor argues that this court should adopt the holding in United States v. Frazier, 53 F.3d 1105,1112 (10th Cir. 1995). In that case, the defendant was the chairman of the board of a non-profit corporation who misapplied grant money to which his corporation was entitled. He, however, did not obtain the grant money by exploiting any of the victims' charitable impulses. The Tenth Circuit determined that under the plain language of § 2F1.1(b)(3)(A), a defendant would be subject to an enhanced sentence where he had "incorrectly, improperly or falsely [represented] that he is either acting as a representative of or in the interest or aid of a charitable, educational, religious or political organization or a government agency." Id. However, the court found this literal interpretation

---

defendant falsely claims to be a fund-raiser for the school, or a defendant who poses as a federal collection agent in order to collect a delinquent student loan.

§ 2F1.1 cmt. n.5 (1998). The background note provided that § 2F1.1 was "designed to apply to a wide variety of fraud cases" and that:

Use of false pretenses involving charitable causes and government agencies enhances the sentences of defendants who take advantage of victims' trust in government or law enforcement agencies or their generosity and charitable motives. Taking advantage of a victim's self-interest does not mitigate the seriousness of fraudulent conduct. However, defendants who exploit victims' charitable impulses or trust in government create particular social harm.

§ 2F1.1.

to be contrary to the plain purpose of the statute. Id. Relying on the hypotheticals contained in the commentary to the guideline, the court held that "the conduct intended to fall within the scope of the guideline is exploitative conduct which induces victims to act upon their charitable or trusting impulses due to the defendant's misrepresentation that he has authority to act on behalf of a charitable, educational, religious or political organization or a government agency." Id. at 1113.

While this court has yet to determine the scope of § 2F1.1(b)(4)(A), a majority of the courts to address this issue have rejected the narrow interpretation of the guideline such as the one adopted by the Frazier court. See United States v. Wiant, 314 F.3d 826, 829 (6th Cir. 2003); United States v. Aramony, 166 F.3d 655, 664 (4th Cir. 1999); United States v. Bennett, 161 F.3d 171, 191-92 (3d Cir. 1998); United States v. Ferrera, 107 F.3d 537, 543 (7th Cir.1997). In Wiant, for example, the defendant, an administrative officer of the American Cancer Society of Ohio ("ACS"), among other things, instructed a bank to transfer $7 million dollars of ACS funds to an account in Austria. 314 F.3d at 828. Although he indicated that funds were for the purpose of funding research grants, the funds were in fact for his personal use. Id. The Sixth Circuit held that "[t]he plain language of the rule clearly encompasses [the defendant's] offense, and it contains no textual support for limiting the rule to solicitation by misrepresentation." Id. at 829. The court explained that "[t]he examples listed in the application notes are obviously illustrative not exhaustive, and thus provide no mandate for limiting the scope of the enhancement's actual language." Id.; see also Berger, 224 F.3d at 120; Bennett, 161 F.3d at 191; Ferrera, 107 F.3d at 541. Additionally, the requirement that a defendant's conduct must exploit the victims' altruistic impulses was squarely rejected by the Second and Seventh Circuits. See United States v. Berger, 224 F.3d 107, 120-21 (2d Cir. 2000); United States v. Ferrera, 107 F.3d 537, 543 (7th Cir. 1997).

The majority position is further buttressed by the § 2B1.1(b)(8)(A), the successor to § 2F1.1(b)(4)(A). The application note to the current guideline provides:

> Subsection (b)(8)(A) applies in any case in which the defendant represented that the defendant was acting to obtain a benefit on behalf of a charitable, religious, or political organization, or a government agency (regardless of whether the defendant actually was associated with the organization or government agency) when, in fact, the defendant intended to divert all or part of that benefit (e.g., for the defendant's personal gain). Subsection (b)(8)(A) applies, for example, to the following:
>
> (i)   A defendant who solicited contributions for a non-existent famine relief organization.
>
> (ii)  A defendant who solicited donations from church members by falsely claiming to be a fundraiser for a religiously affiliated school.
>
> (iii) A defendant, chief of a local fire department, who conducted a public fundraiser representing that the purpose of th[e] fundraiser was to procure sufficient funds for a new fire engine when, in fact, the defendant intended to divert some of the funds for the defendant's personal benefit.

§ 2B1.1 cmt. n.7. The Sentencing Commission explained that it sought to resolve the circuit split regarding whether a defendant must claim authority that does not exist in order for the two-level adjustment to apply.

In United States v. Lambert, 498 F.3d 963 (9th Cir. 2007), the Ninth Circuit discussed the current guidelines, noting that the application note contained two changes meant to clarify the scope of the guideline. First, the current guideline commentary makes clear that the hypotheticals are not meant to be an exhaustive list as it changed the language contained in previous

versions from "[e]xamples of conduct to which this factor applies would include . . . " to "[s]ubsection (b)(8)(A) applies, for example, to the following . . . ." Id. at 966-67. Second, the application note added a parenthetical stating that the guideline applies "regardless of whether the defendant actually was associated with the organization or government agency." As explained by the Lambert court, "[t]his change indicates that Congress, in enacting the current iteration, intended the enhancement to apply where the defendant misrepresents his intentions, regardless of whether he also misrepresents his authority to act, effectively abrogating the decision in Frazier." Id. at 970 (emphasis omitted). In light of this analysis, the Lambert court considered § 2B1.1(b)(8)(A) was applicable to a defendant who had collected funds from an organization under the false pretense that he had written a number of grant application on its behalf. The court held that the guideline applied, rejecting the defendant's contention that the two-level enhancement under the guideline was inapplicable because he did not appeal to victims' charitable motives and did not misrepresent his authority to act on behalf of the organization.

We find the majority approach as well as the analysis put forward in Lambert persuasive. As such, we adopt this approach in the analysis of the present case.[3] Reasor does not dispute that she was employed as the bookkeeper of St. Dominic's Church or that she used La Fiesta and her bank to cash checks drawn on the church's accounts. Although she did not misrepresent her authority to act on behalf of St. Dominic's Church, she did misrepresent that she was acting wholly on behalf of the church in her fraudulent conduct, which is all that is required to be subject to the two-level enhancement under §

---

[3] This court applies retroactively guideline amendments that clarify the meaning of a provision instead of substantively amending it. United States v. Maseratti, 1 F.3d 330, 340 (5th Cir. 1993). However, because we adopt the majority view regarding interpretation of 2F1.1(b)(4)(A) and we find the new guideline to be consistent with it, our resolution of this case would not differ notwithstanding § 2B1.1(b)(8)(A)'s enactment.

2F1.1(b)(4)(A). That she did not exploit the charitable impulses of the victims or misrepresent her authority is of no moment. We hold, therefore, that the district court did not err by adjusting her offense level for misrepresenting that she was acting on behalf of the church.

For the foregoing reasons, we AFFIRM.